[File No. 6666.]

JEWEL TEA COMPANY, Incorporated, a Corporation, Appellant,
v. STATE TAX COMMISSIONER OF THE STATE OF
NORTH DAKOTA, Respondent.

(293 N. W. 386.)

230

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Opinion filed July 30, 1940.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*O'Hare, Cox & Cox,* for appellant.

*Alvin C. Strutz,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for Respondent.

BURR, J. This controversy involves construction of chapter 249, Session Laws of 1937, known as the "Sales Tax Act."

Section 2 of the Act imposes a tax of two per cent upon the gross receipts from all sales of tangible personal property, except as exempted, sold at retail in this state to consumers or users. Section 6 requires the retailer to add the tax, or its average equivalent, to the sales price or charge, and when added, such tax constitutes a part of the price or charge. Section 10, subd. (2) provides that "every retailer, at the time of making the return required hereunder, *shall compute and pay* to the Commissioner the tax due for the preceding period."

Such act imposes a tax upon a "Retail Sale," or a "Sale at Retail;" and these terms are defined by § 1, subd. (c) of the Act as being sales "to a consumer . . . for any purpose, other than for processing or for resale. . . ."

No merchandise involved here was sold for "processing" or resale.

Subdivision (e) of the same section defines a "Retailer" as a "person engaged in the business of selling tangible goods, wares, or merchandise at retail." The provisions of chapter 249 do not apply to "The gross receipts from sales of tangible personal property which this State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State." § 3, subd. (a).

Under the provisions of subd. (1) of § 11 of the Act, "It shall be unlawful for any person to engage in . . . business as a retailer . . . unless a permit . . . shall have been issued to him. . . .

'Every person desiring to engage in . .. . business as a retailer . . . shall file with the Commissioner an application for a permit. .. . "

The plaintiff applied to the Commissioner for such a permit, and it was issued as prescribed by subd. (3) of this section.

It is the duty of the retailer to "make out a return for the preceding quarterly period in such form and manner as may be prescribed by the Commissioner, showing the gross receipts of the retailer, the amount of the tax for the period covered by such return, and such further information as the Commissioner may require to enable him correctly to compute and collect the tax herein levied. . . ." § 9, subd. (1).

The plaintiff made and filed eleven quarterly statements, covering the period from June 30, 1935, to December 31, 1937; but remitted no tax, claiming the property sold was exempt on the ground stated in § 3, subd. (a).

On April 8, 1938, for the first time, the sales tax division sent to the plaintiff notices of assessment for quarters, beginning with the quarter ending June 30, 1935, and down to and including the quarter ending December 31, 1937, the total assessment being $5,105.42; and required the plaintiff to remit "plus penalty prescribed by law."

The plaintiff immediately applied for a hearing before the Commissioner to determine the claim of exemption because of interstate commerce. On May 26, 1938, the Commissioner decided the plaintiff was liable for this tax with penalty. The plaintiff appealed to the district court, and on September 21, 1939, judgment was entered against the plaintiff in the sum of $5,105.42, together with statutory penalties amounting to $1,702.36. From this judgment, and the whole thereof, the plaintiff has appealed.

Plaintiff urges two main propositions: First, that the business transacted in this state was interstate commerce, the imposition of the sales tax is a tax on interstate commerce, contravening Article I, § 8, subd. 3 of the Constitution of the United States, and therefore the exemption cited is applicable. Second, as a subsidiary proposition, plaintiff urges that even if it be held liable for the sales tax, it is not liable for the penalty imposed under the facts in this case.

There is no dispute as to the facts. The Jewel Tea Company, a for-

eign corporation, is engaged in selling various food products direct to the consumer. The Company has a branch office at Moorhead, Minnesota, having North Dakota and a strip in Minnesota as its district. This branch is under the supervision of a manager living in Moorhead. There are eight employees living in North Dakota, known as "route managers." It is the duty of each to solicit orders from consumers in North Dakota, in the particular portion of the state allotted to him. "After he has assembled the summary of merchandise he needs he sends an order to the Moorhead branch." The order is filled there, and the merchandise is shipped in one case to the route manager at his place of business.

The branch house does not know who the customers are, how many there are, or where they are. It sends its route manager the number of pound packages, or five-pound packages, or ten-pound packages he has ordered, and these reach him at his home in one consignment.

As one of the route managers describes the method employed: the merchandise from Moorhead was addressed to the Jewel Tea Company, it arrived at the depot, the drayman signed the receipt and hauled the case to the home of the route manager, the route manager opened the case, put all the packages of merchandise on the shelf, took enough packages to fill each order he had received, delivered these as one package to the consumer in accordance with the consumer's order, and the consumer paid for the goods on delivery.

No merchandise is delivered unless previously ordered. In case a delivery is not made, the goods are held over at times until the next delivery, and in that case, the route manager takes these goods and delivers them to another customer who has ordered a similar quantity. Generally they are returned to Moorhead. This route manager testifying, stated his storeroom is in the basement of his house, and it is there he opens the original packages that come to him from the Company.

The extent of the business transacted by the Company is admitted. The accuracy of the calculations is not disputed.

It is significant that the plaintiff applied to the Tax Commissioner for a permit to do *a retail business in this state*. Of course, this fact alone is not controlling, but it may show how the plaintiff regarded its business, even if it be argued that it was done in excess of caution.

Much of the plaintiff's brief is devoted to a consideration of the propositions: that the statute contemplates a sales tax, not a use tax; that the business originates as interstate commerce; that this state may not tax interstate commerce; that the decisions of the United States Supreme Court are final as to what constitutes interstate commerce; and several subdivisions of these propositions. There is no real controversy over these; but their application to commercial transactions may vary.

Merchandise may have an interstate commerce flavor, and yet a sales tax on the goods be valid. Plaintiff's claim for exemption is based on the theory that the tax is imposed on the plaintiff. What the plaintiff is required to do is to collect the tax and remit. It has employees in the state whose duty it is to collect the price of the goods delivered. The state requires them to assist in collecting revenue. It will be noted that our statute imposes the tax upon the goods sold, to be collected with the payment of the purchase price, and this becomes "a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts." (§ 6.) The retailer must add the tax or its average equivalent to the price or charge. It is the consumer who pays the tax, and under the provisions of § 7, it is made "unlawful for any retailer to advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this Act will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded."

We must not lose sight of the fact that this tax is laid primarily on the consumer. The fact that the plaintiff failed to collect this tax for the state does not absolve it from its duty. There is no discrimination between nonresident and resident retailers, so as to place an unshared burden on the former. The tax is laid only on those who buy within the state; but in order to insure collection of this tax, resort is had to the records of the retailer. To obviate manifest difficulties in assessment and collection, the gross receipts of the retailer are made the basis (§ 2) and he adds the tax to his cost price. (§ 6.) To assure him that the liability will not fall upon him, he cannot be compelled by pressure of competition or any other method to absorb the tax. He is not permitted to do so. (§ 7 quoted above.)

Neither is he burdened by imposition of the tax on the consumer.

Experience has demonstrated that the taxes required to be exacted, though regulated to avoid fractions of cents, may even afford a slight profit, as popularly supposed. But to prevent more tangible imposition on the retailer, it is provided that any taxes "paid on gross receipts represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon subsequent payment of the tax herein provided; provided, that if such accounts are thereafter collected by the retailer, a tax shall be paid upon the amount so collected." (§ 4.)

Neither does the retailer account for the tax on discounted claims, or when property sold is returned to him, when he refunds the sales tax to the consumer; and if conditional sales are made, he accounts for a tax based on the partial payment only. (§ 1, subd. (f).)

The United States Supreme Court, in the case of McGoldrick v. Berwind-White Coal Min. Co. 309 U. S. 33, 84 L. ed. 565, 60 S. Ct. 388, 128 A.L.R. 876, determined that a sales tax on goods transported in interstate commerce is not subject to the charge that it is a burden laid upon interstate commerce when "The ultimate burden of the tax, both in form and in substance, is thus laid upon the buyer, for consumption, of tangible personal property, and measured by the sales price." (p. 568.)

The court continues to analyse the law, saying, "Only in event that the seller fails to pay over to the city the tax collected or to charge and collect it as the statute requires, is the burden cast on him. It is conditioned upon events occurring within the state, either transfer of title or possession of the purchased property, or an agreement within the state, 'consummated' there, for the transfer of title, or possession."

In this case cited, the sales tax was imposed by the city, and the enforcement of the law committed to the Comptroller of the city. The United States Supreme Court further analyses the law thus, "The duty of collecting the tax and paying it over to the Comptroller is imposed on the seller in addition to the duty imposed upon the buyer to pay the tax to the Comptroller when not so collected."

The Court held that (p. 577) "The tax is conditioned upon a local activity delivery of goods within the state upon their purchase for consumption. It is an activity which apart from its effect on the commerce, is subject to the state taxing power. The effect of the tax, even

though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other state taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce."

This appears to be the latest view of the United States Supreme Court, and therefore, under one of the propositions advanced by the plaintiff, is binding until changed.

The holding of the United States Supreme Court in Colorado Nat. Bank v. Bedford, 310 U. S. 41, 84 L. ed. 1067, 60 S. Ct. 800, decided April 22, 1940, is illuminating. The case involved a statute of Colorado, imposing upon a national bank a tax of "two per cent of the value of services rendered" by the bank to its customers, making the bank "liable and responsible for the payment of the entire amount;" requiring it also to remit "all taxes collected and due the state" from the person rendering the service, and requiring him, "as far as practicable, (to) add the tax imposed  .  .  .  to the value of services or charges showing such tax as a separate and distinct item and when added such tax shall constitute a part of such value of service or charge, shall be a debt from the user to the person rendering or performing service until paid, and shall be recoverable at law in the same manner as other debts."

Section 6 of our statute provides that this sales tax added by the retailer to the cost price "shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts."

The "user" in the case cited was one who hired a safety deposit box, the bank operating a safety deposit service in connection with its banking activities. This tax was in addition to the rental service.

Under the Colorado statute the bank was entitled to credit for taxes paid on accounts subsequently found worthless, as the retailer is here. The bank also was required to add the tax as a separate and distinct item, and before the bank could charge rental service, it had to have a license therefor.

We see no difference between the Colorado statute in its theory and this sales tax statute under consideration. To the writer, there is no difference in principle between the "user" paying for a tax on rental

service, and a "customer" paying a tax on personal property purchased, for in many cases, under the sales tax law, the "customer" is a "user."

The Colorado statute permitted the bank to retain three per cent of the tax for its services, whereas the only profit the retailer gets under the sales tax is whatever possible difference there may be between the tax collected and the tax on the gross receipts, if any. Such difference is immaterial, and in any event, does not discriminate between retailers.

The Supreme Court of the United States upheld the constitutionality of this Colorado law on the distinct theory that it was a tax on the user of the service, and not upon the bank, and that such statute did "not impose an unconstitutional burden on a Federal instrumentality." It is difficult to see how our sales tax imposes an unconstitutional burden on interstate commerce if the Colorado statute does not impose an unconstitutional burden on a national bank.

The tax levied being a tax upon the consumer and not upon the retailer, and being one which the state has power to levy, it is unnecessary for us to determine whether the business transacted by the plaintiff in the state is interstate commerce, or should be classified as having lost such character.

This leaves for determination the question of penalty. Plaintiff made its reports quarterly as required by law, beginning with the quarter ending June 30, 1935, and continuing regularly until December 31, 1937. These reports showed the gross receipts as required by § 9 of the statute.

Plaintiff did not "compute and pay to the Commissioner the tax due for the preceding period," as required by subd. (2) of § 10, but this was because of the claim of exemption. There is no claim of failure to file a proper and correct return. No objections were taken to the returns made, and the claim of exemption was not disputed at that time. There is no claim of bad faith, or that the exemption claimed was a subterfuge to evade the payment of the tax. Since the Commissioner did not question the claim for exemption at the time of the filing of the first report, the retailer may be justified in assuming his claim for exemption was allowed. When subsequent repetitions of claims are made without objection, it cannot be said in equity the plaintiff was not justified in assuming that the Commissioner was allowing the exemption.

A claim for exemption made in good faith is no proof of an evasion. No one is required to pay a tax when exempted by law.

Section 15 of the statute provides that "any person failing . . . to pay any tax within the time required . . . shall be subject to a penalty . . . ; but the Commissioner, if satisfied that the delay was excusable, may remit all or any part of such penalty. . . ."

This does not permit arbitrary action on the part of the Commissioner. Differences in interpretation may arise honestly. Tax avoidance is not tax evasion.

As pointed out in Welch v. Henry, 305 U. S. 134, 146, 83 L. ed. 87, 93, 59 S. Ct. 121, 118 A.L.R. 1142, "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract." It is an apportionment of "the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens."

If the claim for exemption is raised in good faith, and the failure to remit the tax at the time the report is filed is due to such claim, the Commissioner should not inflict a penalty when he makes no determination of liability. If the Commissioner is satisfied the claim of exemption is not valid, it is his duty to determine the issue. A continuous failure to disallow the claims for exemptions or to repudiate interpretations will justify a retailer in believing his claim was allowed, or his interpretation approved. The statute makes provision for exemptions, and implies that the duty of passing upon the claim of exemption rests with the Commissioner in the first instance. As soon as he did so, the appeal was taken.

It is clear the failure of the retailer to pay the tax is excusable. Therefore, the penalty imposed should not have been inflicted. Neither may a penalty be inflicted because of resort to the courts. The retailer had the right to appeal from the decision of the Commissioner, and to exhaust all remedies permitted by the statute to maintain its claim. It did so promptly. To inflict a penalty because a litigant resorts to the courts for the purpose of determining his rights is, in effect, "to intimidate the person affected from exercising such right."

This principle announced in State ex rel. Dushek v. Watland, 51 N. D. 710, 711, 201 N. W. 680, 39 A.L.R. 1169, is applicable, viz.: "Where the findings of an administrative bureau, as to matters con-

cerning which a party affected is constitutionally entitled to an opportunity of judicial review are made subject to such review only on the condition that if the party is unsuccessful in the courts he shall pay a large penalty, there is not afforded that opportunity of judicial review guaranteed by the Constitution."

In the case at bar, as in the case cited (51 N. D. at p. 730) there was a reasonable controversy upon fundamental questions, and the plaintiff interposed its defense in good faith.

We realize that primarily it is discretionary with the Commissioner to excuse nonpayment within the time required by the statute; but this is not an arbitrary discretion. Where the failure is clearly attributable to the passive acquiescence of the Commissioner in the claim, it would be as unjust to impose the penalty as it would be to impose a penalty for delay caused by an appeal.

The judgment of the lower court is modified to eliminate the penalty, and with this modification, the judgment is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.