1997 ND 84

**CLADDING TECHNOLOGY, INC., Don Hannu, President, Respondent and Appellant,**

v.

**STATE of North Dakota, By and Through its Tax Commissioner, Richard S. CLAYBURGH, Petitioner and Appellee.**

Civil No. 960276.

Supreme Court of North Dakota.

April 25, 1997.

returns the pipe to the owner of the pipe, who pays Cladding for the repairs.

Cladding does much of this business with Montana Power, a company operating in Montana.

[¶ 3] In September 1994, the Tax Department audited Cladding for taxable periods from January 1991 through June 1994. The Tax Commissioner issued a Notice of Determination that Cladding owed $23,038.75 use tax and $6,593.51 interest and penalties.

Smith, Bakke, Hovland & Oppegard, Bismarck, for respondent and appellant; argued by Sheldon A. Smith. Appearance by Craig B. Burns.

Christianne Y. Runge (argued), Special Assistant Attorney General, Bismarck, for petitioner and appellee.

MESCHKE, Justice.

[¶ 1] Cladding Technology, Inc. appealed an order affirming the Tax Commissioner's decision to assess it for unpaid use taxes, interest, and penalties. After a minor adjustment, we affirm.

[¶ 2] The Tax Commissioner's findings describe Cladding's business:

Cladding is a service business involved in the repair of equipment. This equipment includes mainly used coal chute pipes owned by area power plants. The repair process for this pipe includes an overlay process.... In the overlay process, welding wire or, in most cases, stoody wire, a specialized welding wire, is [arced] onto the inside of the pipes to build them up. The overlay welding process leaves a surface which is resistant to wear and tear due to the type of welding wire used. The overlay welding process is done in the Cladding shop in Mandan. Cladding purchases the materials (mostly wire) and other tangible personal property necessary for the repair work, makes the repairs, and

[¶ 4] Cladding protested and requested a formal hearing. At the hearing, auditor Douglas VerDouw testified for the Tax Commissioner that Cladding operated a specialized repair business but it had not obtained a sales and use tax permit. He testified Cladding had not paid use tax for materials purchased from out-of-state vendors and used in its repair business, and was also responsible for use tax on similar purchases from in-state vendors who had not collected sales tax from it. VerDouw submitted supporting documents with his testimony. VerDouw also testified, in one instance, Cladding charged a customer sales tax, but had not remitted it to the State.

[¶ 5] Donald Hannu, Cladding's president and sole stock-holder, testified and documented that the one instance of sales tax allegedly not remitted was a billing error and that Cladding never collected the tax amount billed. He testified Cladding's work improved the power plant pipes while repairing them. Hannu believed Cladding always paid sales tax on in-state purchases, but he admitted not paying use tax for out-of-state purchases, claiming that resulted from his misunderstanding of the holding in *Quill Corp. v. North Dakota ex rel. Heitkamp*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).[1] Hannu also testified that all out-of-state purchases were subject to a fifteen percent freight cost, but did not offer any documentary proof of separate freight charges.

---

1. In *Quill*, the United States Supreme Court decided that the State of North Dakota could not require an out-of-state vendor to collect a sale tax from a North Dakota purchaser unless the vendor had sufficient nexus with the State to satisfy the Commerce Clause. *Quill*, 504 U.S. at 315–

18, 112 S.Ct. at 1914–16. Hannu testified he believed *Quill* also applied to Cladding so it would not have to pay use tax. Clearly, *Quill* does not benefit Cladding, an in-state purchaser, not an out-of-state vendor.

[¶ 6] The Administrative Law Judge (ALJ) recommended findings of fact, conclusions of law, and an order assessing Cladding the full amount of the use tax, interest, and penalties. The Tax Commissioner adopted the ALJ's decision. Cladding appealed, and the District Court affirmed. Cladding then appealed to this Court.

[¶ 7] Cladding mainly argues most of its purchases were exempt from use tax. According to Cladding, its transactions with Montana Power were sales of improvements that qualify for an express exemption from sales tax for Montana residents. Since it does not have to collect sales tax on "sales" of "improvements" to Montana Power, Cladding urges it is correspondingly exempt from use tax on goods bought and used to improve Montana Power's pipes.

[¶ 8] The Administrative Agencies Practice Act fixes the standard of review for decisions by an administrative agency at NDCC 28–32–19. We summarized this standard in *Western Gas Resources, Inc. v. Heitkamp*, 489 N.W.2d 869, 871 (N.D.1992):

> We affirm an agency decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. Section 28–32–19, N.D.C.C.; *Schiff v. North Dakota Workers Compensation Bureau*, 480 N.W.2d 732 (N.D.1992).

In this case, after a minor adjustment, we affirm the Tax Commissioner's decision to assess use tax, interest, and penalties against Cladding.

[¶ 9] Generally, North Dakota imposes a use tax on "the storage, use, or consumption in this state of tangible personal property purchased at retail for storage, use, or consumption in this state, at the rate of five percent of the purchase price of the property." NDCC 57–40.2–02.1(1).[2] "[E]vidence that tangible personal property was sold by any person for delivery in this state is prima facie evidence that such tangible personal property was sold for use in this state." NDCC 57–40.2–05. Furthermore, materials purchased and used in performing services are taxable:

> The portion of these materials and supplies used and consumed in rendering service is taxable. The purchase cost must be included as use tax on the sales and use tax return of the person rendering the service.
>
> If taxable materials and supplies are purchased from a supplier holding a North Dakota sales and use tax permit, sales tax must be paid to the supplier, but if taxable materials and supplies are purchased from an out-of-state supplier who does not collect North Dakota sales tax, the use tax must be remitted to the tax commissioner by the purchaser.

NDAC 81–04.1–01–22 (part). Thus, someone who purchases material and supplies to use in performing services will generally pay the sales tax to in-state vendors, and must remit the use tax to the Tax Department for purchases from out-of-state vendors. *Id.* Here, Cladding never remitted any use tax, and in some instances did not pay sales tax on purchases in state.

[¶ 10] Cladding mainly relies on NDCC 57–40.2–04(15) and NDCC 57–39.2–04(12) to argue that it owes no sales or use taxes on materials acquired for "improving" Montana Power's pipes while repairing them. NDCC 57–40.2–04(15) excuses use tax on tangible personal property "which would be exempt from the retail sales tax pursuant to an express exemption provided in chapter 57–39.2 if it were purchased in North Dakota." Cladding contends this exemption reflects NDCC 57–39.2–04(12), which exempts from sales tax certain sales to nonresidents who reside in an adjoining state that does not impose a retail sales tax, to create a corresponding use tax exemption for purchases of materials for transactions with exempt nonresidents.[3] Cladding urges, since it does not

---

**2.** Cladding failed to cite this governing law in its brief to this Court.

**3.** NDCC 57–39.2–04(12) specifically exempts

> Gross receipts from a sale otherwise taxable under this chapter made to a person who is a resident of an adjoining state which does not impose or levy a retail sales tax under the following conditions:

have to collect sales tax from Montana Power, Cladding should not have to pay use tax on items purchased for "improving" Montana Power's pipes. We disagree.

[¶ 11] Cladding misconstrues NDCC 57–40.2–04(15). That section grants a use tax exemption for items purchased out of state that would not be subject to sales tax if purchased in state. For example, under NDCC 57–39.2–04(7), if Cladding bought drugs for its employees from an out-of-state vendor, that purchase would not be subject to a use tax because drug purchases would not be subject to a sales tax if bought from an in-state vendor. What Cladding seeks to do, though, is to apply an exemption for a subsequent sale to a previous purchase, not for an exempt purchase.

■ [¶ 12] Cladding really seeks to take advantage of an exemption designed to benefit nonresident purchasers, not to benefit a resident purchaser like Cladding. We reject Cladding's attempt to manipulate the sales and use laws this way.

[¶ 13] Cladding purchased tangible personal property from out-of-state vendors for its repair business, and it is subject to use tax for those purchases. Cladding is also responsible for any sales tax that it did not pay to in-state vendors for similar goods.

[¶ 14] Even if Cladding might invoke a nonresident's sales tax exemption to benefit itself, Cladding has not proven that Montana Power would qualify for this nonresident exemption by having its pipes repaired or improved in North Dakota. According to the findings adopted by the Tax Commissioner:

10. . . . The only evidence presented at the hearing that Montana Power is a registered Montana corporation was the testimony of Don Hannu.

11. There is no evidence in this matter that Montana Power was in the state of

North Dakota for the express purpose of making a purchase.

12. Montana Power did not furnish to Cladding an appropriate certificate signed by an appropriate representative reciting sufficient facts establishing the exempt status of a sale under N.D.C.C. § 57–39.2–04(12). . . .

13. There is no evidence that Montana Power, after obtaining the overlayed pipe from Cladding and paying for it, removed the pipe from North Dakota for use exclusively outside of North Dakota. See N.D. Admin. Code § 81–04.1–03–13.

The Tax Commissioner concluded Cladding operated a repair business, not a business selling "improvements" to a Montana resident.

■ [¶ 15] "Persons engaged in the business of repairing, altering, restoring, or cleaning of tangible personal property belonging to others render a service, which is not subject to sales tax." NDAC 81–04.1–01–22 (part). Thus, Cladding's transactions with Montana Power were repair services, not exempt sales under NDCC 57–39.2–04(12). We agree with the Tax Commissioner's finding: "There is no intent to resell as the tangible personal property is already owned by another business." We conclude that the findings are supported by a preponderance of the evidence and that Cladding would not qualify for a use tax exemption for purchases used in its service business.

[¶ 16] Cladding argues that, if its purchases were not exempt from sales or use taxes, "Fifteen percent of the total cost of all Cladding's out of state purchases of welding wire was made up of transportation costs according to the testimony of Don Hannu." Cladding contends title to the goods passed before delivery was made, so it should not be taxed for the shipping-cost portion of the price.

a. The nonresident is in the state of North Dakota for the express purpose of making a purchase and not as a tourist.
b. The nonresident furnishes to the North Dakota retailer a certificate signed by the nonresident in a form as the commissioner may prescribe reciting sufficient facts establishing the exempt status of the sale. Unless the

certificate is furnished it must be presumed, until the contrary is shown, that the nonresident was not in the state of North Dakota for the express purpose of making a purchase.
c. The sale is fifty dollars or more.
NDAC 81–04.1–03–13 extends this specific exemption to sales to Montana residents.

[¶ 17] Whether any sales or use tax is owed for freight charges depends on who has title to the goods at the time of delivery. *See* NDCC 57–39.2–04(2); NDCC 57–40.2–04(15); NDAC 81–04.1–01–10. If title passes before delivery, buyers are not liable for tax on freight costs when they are shipping their own goods. NDAC 81–04.1–01–10(1). If title passes after delivery, buyers are liable for tax on the whole price, including freight costs for the delivery. NDAC 81–04.1–01–10(2). "Unless a contrary intent appears, delivery to the buyer will be considered prima facie evidence of an intention to pass title at the time delivery is made, and the sale occurs at that time." NDAC 81–04.1–01–10(6). When freight charges are not separately billed to the purchaser, the delivered price is deemed to be the retail sales price. *In re Sales & Use Tax Determination*, 225 N.W.2d 571, 576 (N.D.1974)("Of course, if the retailer quotes a delivered price to the customer, then that delivered price becomes the retail sales price, and tax is to be computed upon it."). Cladding must pay use tax on the entire price of its purchases, including any freight costs not separately billed to it.

[¶ 18] Cladding argues the Tax Commissioner acted arbitrarily in refusing to waive interest and penalties imposed. Cladding asserts it had reasonable and good faith beliefs that it was complying with the tax laws, that it qualified for an exemption for the tax being assessed by the Tax Commissioner, and that it did not have any sales or use tax liability. Cladding complains the Tax Commissioner failed to consider the complexity of the sales and use tax laws and Cladding's honestly different interpretation of those laws.

[¶ 19] Anyone who fails promptly to report or to pay taxes is statutorily subject to interest and penalties unless the Tax Commissioner excuses the taxpayer. NDCC 57–40.2–15(1) directs:

> Any person failing to file a return or corrected return or to pay any tax imposed pursuant to this chapter, within the time required by this chapter, is subject to a penalty of five percent of the amount of tax due or of five dollars, whichever is greater, plus interest of one percent of the tax for each month or fraction of a month except

the first month after the return or the tax became due. . . . The commissioner, if satisfied that the delay was excusable, may waive, and if paid, refund all or any part of the penalty and interest. . . .

As *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 134–35 (N.D.1987), illustrates, the Tax Commissioner's decision not to excuse a taxpayer from paying interest and penalties is discretionary, and we will not disturb that decision unless it was arbitrarily made.

[¶ 20] Cladding relies on *Jewel Tea Co. v. State Tax Comm'r*, 70 N.D. 229, 293 N.W. 386 (1940), to urge these assessments were arbitrary. In that case, Jewel Tea Co. had filed eleven quarterly returns, each claiming an exemption for certain gross receipts, and the Tax Commissioner had not questioned this exemption. *Id.* 293 N.W. at 388. Thereafter, the Commissioner assessed back taxes and penalties against Jewel Tea Co. *Id.* This Court affirmed the tax assessment but reversed the penalties, explaining:

> There is no claim of failure to file a proper and correct return. No objections were taken to the returns made, and the claim of exemption was not disputed at that time. There is no claim of bad faith, or that the exemption claimed was a subterfuge to evade the payment of the tax. Since the Commissioner did not question the claim for exemption at the time of the filing of the first report, the retailer may be justified in assuming his claim for exemption was allowed. When subsequent repetitions of claims are made without objection, it can not be said in equity the plaintiff was not justified in assuming that the Commissioner was allowing the exemption.

*Id.* at 391. Here, Cladding failed to file any sales or use tax report and did not claim any exemption until after its audit; Cladding failed both to report and to pay taxes. We conclude the Tax Commissioner did not act arbitrarily when he refused to excuse Cladding from interest and penalties.

[¶ 21] We conclude Cladding's other arguments are without merit, except that Cladding documented that it did not collect the $81.05 in sales tax mistakenly billed to General Steel and, therefore, it did not fail to remit it. The ALJ ignored that documentary

evidence. We direct the Tax Commissioner to reduce the tax assessment by $81.05 with corresponding reductions of interest and penalties.

[¶ 22] With this minor adjustment, we affirm the assessment of use taxes, interest, and penalties against Cladding Technology, Inc.

[¶ 23] VANDE WALLE, C.J., MARING and NEUMANN, JJ., and EVERETT NELS OLSON, District Judge, concur.

[¶ 24] EVERETT NELS OLSON, District Judge, sitting in place of SANDSTROM, J., disqualified.