[No. 43225.   En Banc.   January 9, 1975.]

CHESTER G. WILSON, *Petitioner*, v. WESTINGHOUSE ELECTRIC CORPORATION, *Respondent*.

*Reed, McClure, Moceri & Thonn, P.S.*, by *William R. Hickman*, for petitioner.

*John F. Kruger* and *James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow*), for respondent.

FINLEY, J.—This is an action to determine whether plaintiff Wilson is entitled to pension benefits, paid and to be paid, at rates which due to defendant's error in computation are in excess of the benefits to which plaintiff is entitled by the actual terms of the pension plan. Defendant Westinghouse sought to recover all overages paid. The trial court held, essentially upon an estoppel theory, that Westinghouse (1) was not entitled to recover the overages already paid, and (2) must continue to pay the pension benefits at the higher rate. The Court of Appeals affirmed the trial court's judgment that the plaintiff is entitled to retain all overages actually paid, but reversed the judgment insofar as it ordered the defendant to continue to pay the benefits as originally computed. We affirm the Court of Appeals.

The facts are as follows: the plaintiff had been employed by defendant Westinghouse for nearly 41 years when, on October 23, 1968, he met with and was informed by his immediate supervisor, J. E. D. Morris, that his services were being terminated.

At this same meeting, Morris suggested that plaintiff apply for early retirement benefits, for which he would qualify on November 25, 1968, when he would attain age 60. The monthly early *retirement* benefit payments are lower than the monthly *ordinary retirement* payments, which begin only upon attaining age 65. However, from an actuarial viewpoint, the total amount to be received under either plan should be the same since the downward adjustment for the early retirement benefits is designed to reflect the fact that they will be paid over a longer period of time. Morris told plaintiff that his pension, at the early retirement rate, would be approximately $750 per month.

Plaintiff subsequently elected to apply for early retirement benefits. In accordance with company procedure, plaintiff, as well as the supervisor of the Westinghouse pension plan administration, and an industrial relations representative of the company all signed a document enti-

tled "Early Retirement Notice." This document reflected the computations made by an employee of Westinghouse and specified that monthly payments in the amount of $788.28 would be paid from December 1, 1968, to November 30, 1970. Thereafter, plaintiff was to be paid $650.78 per month. Westinghouse thereupon issued a "Certificate of Westinghouse Pension Benefits" to plaintiff confirming these figures. All computations were done by Westinghouse.

Westinghouse commenced monthly payments in the designated sum of $788.28 on December 1, 1968. However, in February 1970, Westinghouse discovered that it had made a clerical error in computing plaintiff's benefits and advised plaintiff that, as correctly computed, plaintiff should receive benefits of $625.37 per month from December 1, 1968, to November 30, 1970, and thereafter plaintiff should receive $487.87 per month. Plaintiff's benefits were accordingly reduced to the corrected amount. The excess benefits paid by Westinghouse totaled $2,443.65.

At the time plaintiff's employment was terminated Westinghouse provided personnel procedures whereby an employee whose position was being terminated could seek to have the company locate another position for him in a different capacity. Because plaintiff elected to receive the *early* and higher retirement benefits he was precluded by the terms of the retirement plan from invoking the company procedure for obtaining employment in a different capacity. Plaintiff did spend a short time searching for employment with other companies but this endeavor was limited to positions that offered a salary roughly equivalent to that which he earned at Westinghouse. He was unsuccessful and consequently did not obtain full-time employment until after Westinghouse discovered its computational error. At that time plaintiff accepted employment with another company at a salary approximately two-thirds of that which he received at Westinghouse.

Essentially, two issues are presented: (1) whether West-

inghouse, having made and discovered an error in its computation of plaintiff's pension benefits, is estopped (a) from seeking restitution as to the overages already paid and (b) from seeking reformation as to benefits accruing subsequent to discovery of its error; and (2) whether reformation is inapplicable under the circumstances because of a lack of a mutual mistake.

■ We will now consider the first issue: whether Westinghouse is *estopped* from seeking (a) restitution and (b) reformation. The principle of equitable estoppel is based upon the reasoning that a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon. Under Washington law, three elements must be established before an equitable estoppel may arise: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; (3) injury to such other party resulting from permitting the first party to contradict or repudiate such admission, statement, or act. *Kessinger v. Anderson*, 31 Wn.2d 157, 196 P.2d 289 (1948); *Dorward v. ILWU-PMA Pension Plan*, 75 Wn.2d 478, 452 P.2d 258 (1969); *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974).

In this case, the first element is clearly established since Westinghouse originally represented that plaintiff's benefits would be $788.28 per month for 2 years and thereafter $650.78 per month, only to subsequently retract that statement and announce instead that the benefits would be $625.37 and $487.87 per month respectively.

The second element is likewise clearly established since the plaintiff, on the faith of the accuracy of the representations, elected to accept the early retirement benefits and elected not to pursue other options for employment.

With respect to the third requirement, *i.e.*, that plaintiff prove injury or prejudice, it is necessary to distinguish between (1) the excess benefits *already* paid, and (2) the

excess benefits which Westinghouse refuses to pay that have accrued since discovery of the error and which will continue to accrue unless reformation is granted.

We agree with the Court of Appeals that the plaintiff is entitled to retain the excess benefits already paid and think it clear that the plaintiff properly assumed that the payments tendered to him were accurate and structured his life accordingly. To allow Westinghouse to repudiate its original representations and to require the plaintiff to repay the excess payments at this time would be highly inequitable and prejudicial. Thus estoppel is appropriate with respect to the overages already paid.

The more difficult problem is in ascertaining whether the plaintiff can demonstrate that he would be injured or prejudiced if Westinghouse is allowed to pay only the correctly computed amounts with respect to benefits accruing *after* the date of the error. We shall now consider this problem.

Findings of fact Nos. 21 and 32 are the most pertinent. Finding of fact No. 21 reads:

> At the time of notice of termination of employment, plaintiff had available to him several options, namely to seek employment in another capacity with Westinghouse, or to defer retirement until his normal retirement date at which time he would have received a larger amount than he received at early retirement.

Finding of fact No. 32 reads:

> In accepting early retirement, plaintiff changed his position by *foregoing a chance* to seek other employment with Westinghouse or electing not to take early retirement but to wait until his normal retirement date. Not only did plaintiff change his position in accepting early retirement, he changed his position to his prejudice, that he is now in the position where he cannot be put back in the same position; in other words, it is irrevocable.

(Italics ours.)

The Court of Appeals stated that the last sentence in Finding of fact No. 32 is a conclusion of law and should be treated as such. However, we do not regard this as solely a question of law, but as a mixed question of fact

and law, approximating a conclusion of law and reviewable as such by the Court of Appeals and this court.

The plaintiff argues that he suffered prejudice in two distinct manners: (1) if he had deferred retirement to the ordinary retirement date, he would have received a "larger amount"; and (2) by accepting early retirement, he sacrificed an opportunity to seek other employment with Westinghouse via its personnel placement procedure. Each possible type of prejudice will be analyzed separately.

First, the record does not disclose any means by which plaintiff would have received a greater *total* amount of money by deferring his retirement date to age 65. He would have received larger *monthly* benefit payments by waiting until age 65 to commence his benefits, but as noted earlier, this is a simple actuarial adjustment to compensate for the fact that plaintiff would receive his benefits for a shorter period of time if he elected the later retirement date. Since the total early retirement benefits are the *actuarial equivalent* of the total normal retirement benefits, plaintiff was not prejudiced by electing the early retirement date.

Next, it is argued the plaintiff was prejudiced in "foregoing a chance to seek employment with Westinghouse." If the record showed that there was a *probability, i.e.,* that it was more likely than not that the plaintiff *could have obtained* and *would have accepted* other employment with Westinghouse had he known that the pension plan benefits payable at the early retirement date were lower than represented to him, then arguably he would have been prejudiced by being induced to take the early retirement benefits. But, in the instant case, the record does not show this.

We agree with the Court of Appeals that this *possibility* of obtaining other employment with Westinghouse is too speculative to show that plaintiff was prejudiced by being induced to elect the early retirement benefits. A deprivation of a mere possibility, without a showing that it *likely* would have become a reality, is an insufficient showing of prejudice upon which to predicate an estoppel.

■ It is next necessary to determine whether the mistake involved was mutual or unilateral. This court has repeatedly reiterated the rule that there must be a mutual mistake of the parties to the transaction in order to justify the granting of reformation. A mistake on the part of one party alone is not relievable. The party seeking the reformation has the burden of proving the mutual mistake by clear, cogent, and convincing evidence. *Keierleber v. Botting*, 77 Wn.2d 711, 466 P.2d 141 (1970); *Thorsteinson v. Waters*, 65 Wn.2d 739, 399 P.2d 510 (1965).

Plaintiff argues that he believed that he would receive $788.28 per month and that he never thought otherwise; that if Westinghouse did not have such an intention, the mistake was solely that of Westinghouse and therefore unilateral. Plaintiff urges that, consequently, reformation is not available to Westinghouse.

However, a close analysis of this case shows that two distinct mistakes can be identified: (1) the clerical error in computing the benefits; and (2) the mistaken belief of the parties that the written "Early Retirement Notice" and the "Certificate of Westinghouse Pension Benefits" correctly reflected the amounts which plaintiff was entitled to receive under the terms of the underlying pension plan agreement.

■ We think it unhelpful and analytically erroneous to focus upon who made the clerical error. Rather, since the law of contracts constantly strives to ascertain and enforce the reasonable expectations of the parties, the availability of the remedy of reformation likewise should focus upon and analyze the beliefs, knowledge, and expectations of the parties.

It seems clear that the underlying belief and expectation of the parties herein was that the plaintiff should receive *exactly* that to which he was entitled pursuant to the terms of the Westinghouse pension plan—neither more nor less. Both parties believed that the figure of $788.28 accurately reflected the amount to which the plaintiff was entitled to

receive. In this, they were mutually mistaken. Accordingly, Westinghouse is entitled to reform the "Early Retirement Notice" and the "Certificate of Westinghouse Pension Benefits" to reflect the correctly computed benefits payable to plaintiff.

In sum, we affirm the Court of Appeals and hold that defendant Westinghouse is estopped from recovering all overages actually paid. However, upon discovering its error in computation, Westinghouse immediately stopped making excess payments and reformation should be granted as to benefits accrued and accruing subsequent to discovery of the error. It is so ordered.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.