[No. 44371. En Banc. March 10, 1977.]

HARBOR AIR SERVICE, INC., *Respondent,* v. THE BOARD OF TAX APPEALS, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *Richard D. Hicks, Assistant,* for appellants.

*Short, Cressman & Cable,* by *James A. Oliver* and *Ted Zelasko,* for respondent.

HAMILTON, J.—This appeal concerns a successor's liability for its seller's taxes under RCW 82.32.140 when the successor has complied with Washington's Uniform Commercial Code—Bulk Transfers Article (RCW 62A.6), and the seller has included the Department of Revenue as one of its creditors.[1]

In early 1972, respondent agreed to purchase a flight service from Executive Flight Service, Inc. (Executive). On March 14, 1972, respondent gave notice of the impending

---

[1]RCW 82.32.140 provides:

"Whenever any taxpayer quits business, or sells out, exchanges, or otherwise disposes of his business or his stock of goods, any tax payable hereunder shall become immediately due and payable, and such taxpayer shall, within ten days thereafter, make a return and pay the tax due; and any person who becomes a successor to such business shall become liable for the full amount of the tax and withhold from the purchase price a sum sufficient to pay any tax due from the taxpayer until such time as the taxpayer shall produce a receipt from the department of revenue showing payment in full of any tax due or a certificate that no tax is due and, if such tax is not paid by the taxpayer within ten days from the date of such sale, exchange, or disposal, the purchaser or successor shall become liable for the payment of the full amount of tax, and the payment thereof by such purchaser or successor shall, to the extent thereof, be deemed a payment upon the purchase price, and if such payment is greater in amount than the purchase price the amount of the difference shall become a debt due such purchaser or successor from the taxpayer.

"No successor shall be liable for any tax due from the person from whom he has acquired a business or stock of goods if he gives written notice to the department of revenue of such acquisition and no assessment is issued by the department of revenue within six months of receipt of such notice against the former operator of the business and a copy thereof mailed to such successor."

We note that there is no issue that respondent in this case is a successor as that term is defined in RCW 82.04.180.

sale to the Department of Revenue and provided the department with a list of Executive's creditors as required by RCW 62A.6–104(1)(c)[2] and RCW 62A.6–107(3).[3] Executive's list of creditors included the Department of Revenue with no claimed amount shown. The department replied to this notice with a form letter dated March 29, 1972. This letter stated in part:

The Bulk Sales Affidavit of the above named Vendor, served by you on the Department of Revenue of the State of Washington, appears to be correct with the following exceptions:
We are unable to locate any record of having received excise tax returns for the period from January 1, 1972 through the close of business.
Audit—Outstanding.

Subsequently, Executive filed its final excise tax returns showing its close of business as being April 19, 1972, and paid its excise taxes for the period January 1, 1972, through April 19, 1972. Although the department's March 29, 1972, letter stated that an audit was outstanding, the actual audit had not begun at that time. The record before us does not

---

[2] "(1) Except as provided with respect to auction sales (RCW 62A.6–108), a bulk transfer subject to this Article is ineffective against any creditor of the transferor unless:
"...
"(c) The transferee preserves the list [of creditors] and schedule [of property transferred] for six months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, and files the list and schedule in the office of the county auditor of the county in which the property transferred is located *and serves it upon the office of the state department of revenue;* the list and schedule shall be indexed as chattel mortgages are indexed, the name of the vendor being indexed as mortgagor and the name of the intending purchaser as mortgagee." (Italics ours.) RCW 62A.6–104(1)(c).

[3] "(3) The notice [to creditors] in any case shall be delivered personally or sent by registered or certified mail to all the persons shown on the list of creditors furnished by the transferor (RCW 62A.6–104), to all other persons who are known to the transferee to hold or assert claims against the transferor, *and to the office of the state department of revenue.* A copy of the notice shall be filed in the office of the county auditor of the county in which the property transferred is located and indexed as chattel mortgages are indexed, the name of the vendor being indexed as mortgagor and the name of the intending purchaser as mortgagee." (Italics ours.) RCW 62A.6–107(3).

disclose the date on which the audit actually began. The parties stipulated that the audit was completed on May 10, 1972. The department also conducted a supplemental audit on June 9, 1972. Meanwhile, on May 30, 1972, respondent disbursed the purchase funds which it was holding.

As a result of its audits, the Department of Revenue issued a tax assessment against Executive for taxes due during the period January 1, 1968, through April 19, 1972. On June 21, 1972, the department notified respondent of this tax assessment and of respondent's possible liability as a successor under RCW 82.32.140. On July 13, 1972, the department advised the respondent that the department was holding respondent liable for Executive's taxes.

Respondent filed an appeal with the Board of Tax Appeals, claiming that its compliance with the bulk transfers article precluded the department from asserting respondent's liability for Executive's taxes under RCW 82.32.140. The board disagreed and concluded that RCW 82.32.140 was applicable, notwithstanding respondent's compliance with the bulk transfers article. Respondent also argued to the board that the department's March 29, 1972, letter was ambiguous and misleading in reference to the tax period encompassed by the audit and, therefore, the department was estopped from asserting respondent's liability for any taxes due from Executive prior to January 1, 1972. The board found that even though the March 29, 1972, letter may have been ambiguous, "normal discussions of the audit . . . must have disclosed the scope of the audit by the time the auditor finalized his report" so that the department was not estopped from enforcing RCW 82.32.140.

Respondent, pursuant to the administrative procedures act (RCW 34.04), appealed the board's decision to the Grays Harbor Superior Court, which reversed the board's decision. The Superior Court concluded that respondent's compliance with the bulk transfers article and the department's failure to file a liquidated claim within 30 days as required by RCW 62A.6–106(1) precluded the department

from using RCW 82.32.140. The court also found the March 29, 1972, letter was insufficient notice that taxes might be due for any period prior to January 1, 1972, and therefore the department was estopped from holding respondent liable under RCW 82.32.140. The court entered a judgment reversing the Board of Tax Appeals and ordering the department to refund the taxes which respondent had paid under protest. It is from this judgment that the department has appealed.

█ We disagree with the Superior Court's conclusion that respondent's compliance with the bulk transfers article prevents the department from using RCW 82.32.140, for we believe the bulk transfers article is not applicable to the State in its tax collecting status. The bulk transfers article was enacted for the purpose of protecting unsecured creditors who have lent credit to the seller relying on the assets of the seller's business. *See* Official Comment 2, RCWA 62A.6–102. RCW 62A.6–109(1) lists the creditors who are protected by the bulk transfers article provisions:

(1) The creditors of the transferor (or claimants against the transferor) mentioned in this Article are those to whom the transferor is indebted for or on account of services, commodities, goods, wares, or merchandise, or fixtures and equipment, used in or furnished to the business of the transferor, or for or on account of money borrowed to carry on the business of the transferor or for or on account of labor employed in the course of the business of the transferor, of which the goods, wares and merchandise, or fixtures and equipment, bargained for or purchased are a part. Creditors who become such after notice to creditors is given (RCW 62A.6–105 and RCW 62A.6–107) are not entitled to notice.

The State does not fit within this definition. Although it does provide services to a business, it does not lend credit or provide services to a business in the normal debtor-creditor sense. The State provides governmental services to a business as a citizen of the State, and the business pays for the services in its capacity as a taxpayer. *See Richards v. Blackmon,* 233 Ga. 739, 213 S.E.2d 638 (1975). We do not

find persuasive respondent's argument that the State is bound by the bulk transfers article, because certain provisions of RCW 62A.6–104(1)(c) and RCW 62A.6–107(3) require the transferee to deliver certain lists and schedules to the Department of Revenue. We believe these notice provisions were inserted in Washington's version of the Uniform Commercial Code[4] for the purpose of informing the department of the impending sale. If the legislature had intended the State to be considered a creditor under the bulk transfers article, it could easily have required the seller to list the State as one of its creditors under RCW 62A.6–104(2).[5] The notice provisions of RCW 62A.6–104(1)(c) and RCW 62A.6–107(3) do not in and of themselves make the State a creditor.

Respondent also asserts that this court has already decided that back taxes are a debt for services in *Seattle Lodge No. 211, Loyal Order of Moose v. Par–T–Pak Beverage Co.*, 55 Wn.2d 587, 349 P.2d 229 (1960), so that the State falls within the RCW 62A.6–109(1) definition of creditor. We do not believe the *Par–T–Pak* case can be read so broadly. That case involved the sale of a business by a vendor–lessee to a vendee–sublessee. The lessor was attempting to collect back taxes from the vendee–sublessee, because the lease provided that the tenant would pay all taxes. The State was not attempting to collect the taxes;

---

[4]The official text of the Uniform Commercial Code—Bulk Transfers Article, as drafted by The American Law Institute and the National Conference of Commissioners on Uniform State Laws, does not contain any provisions for the giving of notice to a state taxing authority. See *Uniform Commercial Code, Article 6* (1962 version).

[5]RCW 62A.6–104(2) provides:
"(2) The list of creditors and the schedule must be signed and sworn to by the transferor or his agent. It must contain the names and business addresses of all creditors of the transferor, with the amounts when known, and also the names of all persons who are known to the transferor to assert claims against him even though such claims are disputed. If the transferor is the obligor of an outstanding issue of bonds, debentures or the like as to which there is an indenture trustee, the list of creditors need include only the *name and address of the indenture trustee and the aggregate outstanding principal amount of the issue."

rather, the lessor, who had already paid the taxes, was attempting to collect them pursuant to a private agreement.

■ Even though the bulk transfers article does not apply to the State, we believe the Superior Court correctly reversed the Board of Tax Appeals on the issue of estoppel. The Department of Revenue urges us to uphold the board's decision, because the Superior Court did not give proper weight to the Board of Tax Appeals' decision as required by RCW 34.04.130(6). However, the court has the power, under RCW 34.04.130(6)(e), to reverse the board's decision if its findings are "clearly erroneous in view of the entire record as submitted . . ."

> Perhaps the best description of the "clearly erroneous" test was set forth by the United States Supreme Court in *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). The trial court found that the board's decision was based on assumptions not supported in the record. The board recognized the ambiguous nature of the department's March 29, 1972, letter but concluded that normal discussions surrounding the audit *must* have disclosed the audit's scope before the respondent disbursed the purchase funds. There is nothing in the record regarding discussions with the auditor. In fact, the evidence before the board reveals that respondent did not know the audit covered any period prior to January 1, 1972, until respondent received notification of the tax assessment against Executive on June 21, 1972.

■■ Three elements must be present to create an estoppel: (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *In re Estate of Boston,* 80 Wn.2d 70, 491 P.2d 1033 (1971). *Peplinski v. Campbell,* 37 Wn.2d 857, 226 P.2d 211 (1951)..The department's March 29, 1972, letter states, in part:

> If the Vendor can produce evidence to the satisfaction of the Successor that the items listed above have been paid, further correspondence with the Audit Section is not necessary. If he cannot do so, Successor should comply with the provisions contained in Department of Revenue Published Rule 216, . . .

The "items listed above" discussed in the letter were Executive's excise tax returns for January 1, 1972, through its close of business and the outstanding audit. Executive furnished evidence to respondent that it had paid the excise taxes for January 1, 1972, through its close of business. There is nothing in the letter to suggest that the audit would cover any period prior to January 1, 1972. The letter informed respondent to comply with rule 216, only if Executive could not produce sufficient evidence that it had paid the items listed. Rule 216 is substantially identical to RCW 82.32.140. *See* WAC 458-20-216. We believe respondent reasonably relied on the department's statement that compliance with rule 216 was necessary only if Executive could not produce sufficient evidence that its excise taxes for January 1, 1972, to the close of business were paid. Although the general rule is that courts should be most reluctant to find the State equitably estopped when public revenues are involved, *see Wasem's, Inc. v. State,* 63 Wn.2d 67, 70, 385 P.2d 530 (1963), we believe the facts in this case warrant the finding. The department could have easily clarified the scope of its audits and prevented respondent's misunderstanding. The Superior Court found that respondent would not have disbursed the purchase funds if it had known the scope of the audit. Permitting the department to collect Executive's taxes from respondent would result in manifest injustice to respondent and should not be allowed.

*See Finch v. Matthews,* 74 Wn.2d 161, 175, 443 P.2d 833 (1968).

The judgment of the Superior Court is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACH-TENBACH, HOROWITZ, and DOLLIVER, JJ., concur.