[No. 28337-5-I.   Division One.   January 27, 1992.]

MIKHAIL KRAMAREVCKY, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

OLIVIA S. JINNEMAN, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*William Rutzick* and *Schroeter, Goldmark & Bender, P.S.;* *Yvette Hall War Bonnet* and *Elizabeth A. Schott* of *Evergreen Legal Services;* and *Barbara Baker* of *Puget Sound Legal Assistance Foundation,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Robert L. Schroeter, Assistant,* for respondents.

AGID, J. — Petitioners Mikhail Kramarevcky and Olivia S. Jinneman, both former recipients of public assistance benefits, challenge the reversal by a Department of Social and Health Services (DSHS) review judge of the initial decisions made by the administrative law judges (ALJ) in each of their cases. The ALJ's found that equitable estoppel applied to prevent DSHS from seeking recoupment of public assistance overpayments made by DSHS to each of the petitioners. We agree with the ALJ's and reverse the decision of the review judge.

## I
### FACTS OF THE CASES
#### Kramarevcky

Petitioner Mikhail Kramarevcky and his wife are refugees from the Soviet Union who arrived in the United States on April 26, 1989, with their minor son, Andre. Between September 1989 and October 1990, the Kramarevckys received both income and food assistance benefits through the Family Independence Program administered by DSHS. Kramarevcky obtained employment in December 1989 and provided DSHS with a copy of his first pay stub. DSHS failed to send Kramarevcky monthly income reporting forms as required by established procedure. Kramarevcky therefore did not understand that he had any further obligation to report his wages. As a result, his earned income was not considered in DSHS' calculation of benefits awarded to his family for the 4-month period of February through May 1990. DSHS subsequently determined that Kramarevcky had received an overpayment of $1,375 in financial assistance and $262 in food assistance

during that 4-month period and issued an overpayment letter to that effect.

After the administrative hearing at which Kramarevcky contested the assessed overpayments, the ALJ found that Kramarevcky had followed all proper procedures and had no reason to believe his eligibility had ceased, that he could have been eligible for job training reimbursement had he not received the overpaid benefits, and that both he and his wife are now partially disabled and have no income or resources with which to repay DSHS. The ALJ therefore concluded that each of the elements of the defense of equitable estoppel had been met, and DSHS was estopped from recouping the overpaid amounts.

### Jinneman

Olivia Jinneman was the recipient of categorically needy medical assistance under the Aid to Families with Dependent Children (AFDC) Program, also administered by DSHS. Jinneman had provided DSHS with accurate information concerning the date of birth of her son, whose 18th birthday occurred on April 29, 1988. Because her son was not attending school at the time of his 18th birthday, the family unit became ineligible for the AFDC program. As a result, Jinneman was no longer eligible for the medical coupons she continued to receive from May 1, 1988, through June 30, 1989. Upon discovering its error, DSHS terminated Jinneman's medical assistance and assessed a $1,759.94 overpayment against her for medical assistance received during that period.

At her hearing to contest the overpayment assessment, a different ALJ found that the overpayment stemmed solely from DSHS' error, and that Jinneman would have obtained medical care through alternative sources such as women's clinics and the fire department if she had been correctly advised of her ineligibility for medical assistance. The ALJ also found that Jinneman's average disposable income for the 11 months preceding the hearing was $527 a month, an amount barely adequate to meet her current needs. The

judge concluded that the elements of equitable estoppel had been met, and DSHS was therefore estopped from recouping the assessed overpayment from Jinneman.

DSHS appealed each of the initial decisions made by the ALJ's to a DSHS review judge. The review judge adopted all the findings of fact made by the ALJ's in each case, but reversed on the basis that all of the elements required to assert equitable estoppel against the government were not met. Each of the recipients subsequently filed a petition for review in Snohomish County Superior Court pursuant to RCW 34.05.510 *et seq.* and RCW 74.08.080. The petitions were consolidated through an agreed order, and certified to this court, which accepted review by order of May 23, 1991.

## II
### STANDARD OF REVIEW

■ ■ An agency's determination that the elements of equitable estoppel have not been met presents a mixed question of law and fact. *Coble v. Hollister*, 57 Wn. App. 304, 308-09, 788 P.2d 3 (1990). In reviewing administrative decisions, we apply a clearly erroneous standard to factual findings and review legal conclusions de novo. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324-25, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). When conclusions of law are not supported by or are inconsistent with the findings, the findings control. *Mell v. Winslow*, 49 Wn.2d 738, 747, 306 P.2d 751 (1957); *Riley v. Sturdevant*, 12 Wn. App. 808, 812, 532 P.2d 640 (1975). In both of these cases, the review judge adopted all of the findings of fact made by the ALJ's, which findings are not contested. The issues raised on certification concern the application of law to those facts and are thus conclusions of law subject to de novo review.

## III
### EQUITABLE ESTOPPEL DOCTRINE

■ The elements of equitable estoppel are:

(1) an admission, statement, or act, inconsistent with the claim afterwards asserted; (2) [an] action by the other party on the faith of such admission, statement, or act; and (3) [an]

injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement, or act.

*Shafer v. State*, 83 Wn.2d 618, 623, 521 P.2d 736 (1974). When a party seeks to assert equitable estoppel against the State, that party must also show (1) that equitable estoppel is necessary to prevent a manifest injustice and (2) that the exercise of governmental powers will not thereby be impaired. *Finch v. Matthews*, 74 Wn.2d 161, 175, 443 P.2d 833 (1968). Because equitable estoppel against the government is disfavored, each of the elements must be established by clear, cogent and convincing evidence. *Chemical Bank v. WPPSS*, 102 Wn.2d 874, 901 n.7, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065, 1075 (1985); *Mercer v. State*, 48 Wn. App. 496, 500, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987). The burden of proving each of the elements is on the party seeking to invoke the doctrine of equitable estoppel. *Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 760-61, 695 P.2d 996 (1985); *Mercer*, 48 Wn. App. at 500.

Where public revenues are involved, a general rule has been articulated that, at least in tax cases, courts should be "most reluctant" to find the State equitably estopped. *Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 367, 560 P.2d 1145 (1977) (applying equitable estoppel to the State); *Wasem's, Inc. v. State*, 63 Wn.2d 67, 70, 385 P.2d 530 (1963) (finding the elements of estoppel not met). Further, current federal and state legislation both impose on DSHS the duty to take all possible steps to recoup overpaid amounts. 42 U.S.C. § 602(a)(22); RCW 43.20B.630; WAC 388-44-140. However, neither federal nor state legislation and case law prohibit the application of equitable estoppel in appropriate cases. *E.g., Harbor Air*; *Lentz v. McMahon*, 49 Cal. 3d 393, 777 P.2d 83, 261 Cal. Rptr. 310 (1989).

## IV
### APPLICATION OF THE DOCTRINE

The parties agree that the first two elements of equitable estoppel were met in each of these cases. At issue here is

the determination by the review judge that the remaining elements — "injury", "manifest injustice", and "nonimpairment of government powers" — were not met in either case.

A. The Injury Element.

The review judge concluded that, in order to establish an injury, a recipient must demonstrate either that he or she was substantively eligible for the assistance paid, or that the recipient was eligible for some other form of benefits that he or she would have received but for the overpaid assistance.[1] In characterizing the injury requirement in this manner, the review judge declined to consider as binding or instructive two Washington cases concerning the application of equitable estoppel, *West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 586 P.2d 516 (1978), *review denied*, 92 Wn.2d 1032 (1979) and *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975), relying instead on two out-of-state cases, *Lentz v. McMahon, supra*, and *Thrift v. Adult & Family Servs. Div.*, 58 Or. App. 13, 646 P.2d 1358 (1982). The review judge's reliance on these out-of-state cases is misplaced.

In *Lentz*, the court held that a recipient may assert equitable estoppel as a defense when a government agent causes a claimant to fail to comply with a procedural precondition to eligibility. The court did not reach the question presented here; *i.e.*, can the nature of the official misconduct and the resulting hardship on an ineligible recipient outweigh the damage to the government caused by prohibiting the repayment assessment, thus supporting a claim of estoppel. 49 Cal. 3d at 401-02. *Lentz* simply does not provide support for the conclusion that an ineligible recipient of overpaid benefits is precluded from asserting the defense of equitable estoppel.

*Thrift* is not persuasive for a different reason. In *Thrift*, the Oregon court declined to apply equitable estoppel on the

---

[1]The review judge also announced that any such injury is limited to the amount of other benefits forgone as a direct consequence of receiving the overpayment, which amount must be proved by clear, cogent and convincing evidence. We note that there is currently no such requirement under Washington law, and decline to engraft such a requirement onto it.

ground that the recipient did not "lose a benefit to which she was otherwise entitled." 58 Or. App. at 17. There, the applicant, through agency error, had received an amount of public assistance greater than that to which she was substantively entitled. However, that same court has subsequently ruled that equitable estoppel in Oregon is not limited to cases in which the individual asserting estoppel was deprived of a benefit that would have been received but for the government's misleading or erroneous actions. In *In re Tax Rate Assessments of Western Graphics Corp.*, 76 Or. App. 608, 613-14, 710 P.2d 788, 791 (1985), the Oregon court held that a party asserting estoppel must establish that he relied on misleading information to his detriment, which may, but need not, have involved a lost benefit to which he was entitled. Thus, *Thrift* is no longer the law in Oregon.

In contrast, *West* and *Wilson* are both instructive with respect to the manner in which equitable estoppel has been applied in Washington. While *Wilson* involved the assertion of equitable estoppel against a private, rather than a governmental, entity, it speaks to the first three elements of equitable estoppel, the third of which is, of course, the injury element.[2] Both *Wilson* and *West* strongly suggest that substantive eligibility for an overpaid benefit is not a necessary prerequisite to a finding that injury results from the repayment of an overissued amount.

In *Wilson*, the parties agreed that Mr. Wilson was not substantively eligible for excess pension payments he had received. *Wilson*, 85 Wn.2d at 80. However, the court held that Westinghouse was estopped from recouping excess pension benefits already paid to Wilson because of an error by Westinghouse in computing those benefits. It was clear that the recipient had properly assumed that payments tendered to him were accurate and had structured his life accord-

---

[2]Washington case law applies the same three basic elements of estoppel to private or governmental entities. The elements specifically required to establish equitable estoppel against the government are in addition to these first three elements. *E.g., Beggs v. Pasco*, 93 Wn.2d 682, 689, 611 P.2d 1252 (1980); *Shafer*, 83 Wn.2d at 622-23.

ingly.[3] *Wilson*, 85 Wn.2d at 79, 82. *West* also involved a benefit, in the form of forbearance of an obligation, to which the plaintiff was not substantively entitled. *West*, 21 Wn. App. at 579. There, the court held that DSHS was estopped from collecting foster care payment contributions from a parent. The court found that the parent had changed her position to her detriment, *i.e.*, unknowingly acquired the support obligation, as a result of DSHS' silence in the face of its duty to inform West of that accruing obligation.

Thus, in analyzing the injury requirement, we look to see if there was a change in position by a party reasonably relying on an agency's silence in the face of a duty to accurately inform the party invoking equitable estoppel. Despite DSHS' failure to perform its duty to inform Kramarevcky and Jinneman,[4] it seeks to require them to repay debts which they had no reasonable basis to anticipate and for which they made no provision. These cases are indistinguishable from *West* and *Wilson*. Given the unchallenged findings here with respect to the limited resources of each of the petitioners, we hold that the imposition of the debt and the burden imposed by requiring its repayment is a sufficient injury to satisfy that requirement of equitable estoppel.

B. The Manifest Injustice Requirement.

The review judge also concluded that requiring the petitioners to repay amounts for which they were not categorically eligible would not result in a manifest injustice. She reasoned that this requirement was not met because the State would not achieve any gain by recovering amounts wrongfully paid and because there was no " 'solemn written

---

[3]In contrast, the court found no injury with respect to readjusting the prospective payments: "A deprivation of a mere possibility, without a showing that it *likely* would have become a reality, is an insufficient showing of prejudice upon which to predicate an estoppel." 85 Wn.2d at 83.

[4]WAC 388-44-020(4) (DSHS "must inform all applicants and recipients of their rights and responsibilities concerning eligibility for and receipt of assistance"); WAC 388-38-030(3) ("Each applicant shall be fully informed of his or her legal rights and responsibilities in connection with public assistance").

commitment' " accompanying the issuance of the overpaid assistance. Both factors are bases on which equitable estoppel has been invoked against the government in earlier Washington cases.[5] Washington case law does not suggest, however, that these are either necessary or exclusive factors in determining whether a manifest injustice will result.[6]

Petitioners and DSHS evaluate any potential injustice in allowing recoupment of the overpaid benefits from contrasting perspectives. DSHS argues that applying estoppel would be unjust to other needy recipients who would be limited only to the correctly calculated amount and would not receive a similar "windfall". Petitioners emphasize the effect of the review judge's decision on the individual parties before the court. They argue that, as the ALJ in each case concluded after considering the petitioners' resources and earning capacities, a manifest injustice would result from requiring the repayments in these circumstances.

■ Washington case law supports petitioners' position. Our courts have consistently evaluated the potential for manifest injustice in terms of the impact on the parties before them, not of unfairness to third persons who are not parties to the case.[7] The focus of these cases on the manifest injustice to the parties before the court is the correct one. We conclude that it would be manifestly unjust to require persons with extremely limited resources and income to

---

[5]*Finch v. Matthews*, 74 Wn.2d 161, 176, 443 P.2d 833 (1968) (equitable estoppel deemed necessary to prevent the State's obtaining unjust enrichment or dishonest gains at the expense of a citizen); *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 143, 401 P.2d 635 (1965) (equitable estoppel applied to prevent an administrative body from revoking its approval of a variance where the applicant, who acted in good faith on a "solemn written commitment", would be bankrupt as a result).

[6]*Mercer Island v. Steinmann*, 9 Wn. App. 479, 482, 513 P.2d 80 (1973) characterized this requirement as an "obvious injustice" and suggested that this means that the evidence must present an unmistakable justification for imposition of the doctrine.

[7]*E.g., Beggs*, 93 Wn.2d at 689; *Harbor Air*; *Finch*, 74 Wn.2d at 176; *Playhouse Corp. v. Liquor Control Bd.*, 35 Wn. App. 539, 540, 667 P.2d 1136 (1983); *Hasan v. Eastern Wash. Univ.*, 24 Wn. App. 829, 834, 604 P.2d 191 (1979).

take on the added burden of repaying a debt incurred entirely without their knowledge and acquiescence, solely through the fault of the party against whom estoppel is sought.

The record below supports our conclusion that failure to apply equitable estoppel here will result in a manifest injustice. As the ALJ's found, petitioners provided timely and accurate information to DSHS, the overpayment stemmed from DSHS' error and its error alone, the overpayment involved a simple continuation of benefits for which petitioners had been eligible and which were already being received at the time of the error, and there were no circumstances which might have alerted the recipients to the fact of overpayment.[8] As noted above, the ALJ's also found that the petitioners do not have the resources to repay the debt without drawing on funds currently needed to meet their most basic needs. In addition, there is no evidence from which any reasonable inference can be drawn that petitioners in any way abused the public assistance system. The combination of these facts, which are not disputed, is persuasive evidence that the manifest injustice requirement is met here.

C. Impairment of Governmental Functions.

The review judge looked to the cumulative effect of allowing the application of equitable estoppel in all cases like these as a basis for precluding assertion of the doctrine

---

[8]In contrast, *see Cudal v. Sunn*, 69 Hawaii 336, 346, 742 P.2d 352, 358 (1987), where the Hawaii Supreme Court declined to apply the doctrine of equitable estoppel in part because the recipient was aware that there might be a reduction in the assistance to which she was entitled when she and her daughter became part of another household.

Here, petitioners' reliance on DSHS' acts was reasonable and, by not contesting the second element of equitable estoppel in these cases, DSHS appears to so concede. *Schoneman v. Wilson*, 56 Wn. App. 776, 784, 785 P.2d 845 (1990) ("Implicit in the [three] factors is that the assertion on which estoppel is based must induce detrimental reliance by the other party. Such reliance, in turn, must be reasonable.") (Citation omitted.) While we recognize that the reasonableness of a party's reliance is properly analyzed under the second element of equitable estoppel, it is difficult to conceive of a case in which a manifest injustice could be found in the absence of reasonable reliance.

here. She concluded that DSHS would be "excessively impaired in the administration of public assistance programs" due to the expense to the State of being prevented from assessing overpayments in other similar situations.[9]

■ The review judge erroneously relied on *Litz v. Pierce Cy.*, 44 Wn. App. 674, 684, 723 P.2d 475 (1986) to justify considering the potential cumulative effect of similar decisions as a basis for refusing to estop the State. In *Litz*, the court did conclude that applying equitable estoppel would excessively impair Pierce County's exercise of its governmental powers. However, this was because the local government would be required to undertake repairs costing approximately $1 million to maintain a specified level of ferry service to a private island under circumstances in which Pierce County had made no assurances that the existing level of service would continue indefinitely. *Litz*, 44 Wn. App. at 683-84. Thus, *Litz* does not stand for the proposition that a court may speculate about the potential cumulative impact of many similar outcomes in other cases to justify a conclusion that equitable estoppel cannot be applied in the case before it. Moreover, loss of state revenue alone does not necessarily impair governmental powers. *Harbor Air*, 88 Wn.2d at 367.

■ Rather, we must look to public policy considerations to determine whether application of any equitable defense interferes with the proper exercise of governmental duties. *Housing Auth. v. Northeast Lk. Wash. Sewer & Water Dist.*, 56 Wn. App. 589, 593, 784 P.2d 1284, 789 P.2d 103, *review denied*, 115 Wn.2d 1004 (1990). We consider relevant to this inquiry which party could best have prevented the mistakes that occurred[10] and who is in the better position to assure

---

[9]We express some dismay at the assumption that similar errors will continue to be made in quantities large enough to significantly affect state revenues and question whether such an assumption is, in any event, a proper basis for a judicial decision.

[10]The ease with which a misunderstanding could have been avoided is a factor in allowing the assertion of equitable estoppel. *Harbor Air*, 88 Wn.2d at 368.

that future errors of this kind do not occur.[11] Here, that party is DSHS. The regulatory scheme does not place the burden of determining eligibility on the recipient.[12] Thus, when all information is accurately and timely provided by the recipient, it is appropriate to put the burden on the government to assess eligibility accurately in light of the information provided.

We recognize that policies such as preventing windfall benefits unrelated to present needs and safeguarding the accurate and orderly administration of the welfare system are also important.[13] However, as noted above, these petitioners are impoverished and lack any resources with which to repay DSHS, thus minimizing the persuasiveness of the windfall rationale. In addition, as the ALJ's found, both families would have been eligible for other benefits and services had they been informed that they were no longer eligible for assistance from DSHS. Finally, we hope that application of equitable estoppel in these cases will improve the accurate and orderly administration of the entitlements system by providing an impetus to more adequately monitor and control it. The overpayments here stemmed from DSHS' error alone. Because only DSHS is in a position to review and revise its procedures so as to assure that fewer such mistakes are made in the future, government functioning will not be impaired.

In so holding, we emphasize that it is the particular combination of factors present here that is dispositive of this case. Other cases might yield different results based on the presence or absence of factors such as those enumerated above.

---

[11]It has been suggested that when a court refuses to apply estoppel in an appropriate situation, the court encourages inefficient bureaucracy. *See* Comment, *Estoppel and Government*, 14 Gonz. L. Rev. 597, 606 (1978-1979).

[12]RCW 74.08.060.

[13]These are policy considerations noted by the court in *Lentz*, 49 Cal. 3d at 400-01.

Because we have already ruled in favor of petitioners on their equitable estoppel claim, we need not reach the question of whether, based on the unappealed decision of the Thurston County Superior Court in Chaplin v. Sugarman, Thurston Cy. cause 87-2-01239-2 (June 12, 1990), reaching a similar result, collateral estoppel also applies in this case.

V

ATTORNEY FEES

RCW 74.08.080(3)(a) provides that an appellant is entitled to reasonable attorney fees and costs in the event that a decision is rendered in the appellant's favor by a court reviewing an adjudicative proceeding involving public assistance benefits. The attorney fees requested by petitioners are awarded subject to the requirements of RAP 18.1.

Reversed.

BAKER and KENNEDY, JJ., concur.

After modification, further reconsideration denied March 31, 1992.

Review granted at 120 Wn.2d 1012 (1992).