MR. CAR WASH, INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.

(No. 12435;

Fourth District—April 24, 1975.

Waaler, Evans, & Gordon, of Champaign (Robert J. Waaler, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Jerry Felsenthal, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff, Mr. Car Wash, Inc., appeals from a judgment of the circuit court of Champaign County affirming the issuance of a final assessment by the State Department of Revenue of $2,090.92 in retailers' occupation taxes, interest and penalties. The following issues are raised by the parties on appeal: (1) Whether plaintiff may take a 5-cent deduction on each gallon of gasoline sold from its gross receipts for the sale of gasoline in order to ascertain its retailers' occupation tax liability, (2) Whether the State is estopped from assessing plaintiff and (3) Whether the lower court judgment should draw interest for the time it is on appeal.

Plaintiff operates two car washes in the Champaign area. Plaintiff also sells gasoline at these establishments and possesses a certificate of registration for payment of the State retailers' occupation tax on gasoline sales. On March 31, 1972, plaintiff was notified by the Department of Revenue that an audit revealed a deficiency of $1,580.81 in retailers' occupation tax on the sale of gasoline from January 1969 through October 1971. An administrative hearing was held on July 19, 1972. At the hearing George E. McMichaels, an auditor for the Department of Revenue, testified that he reviewed the audit of plaintiff's records and that said audit showed a tax deficiency of $1,507.81 because of the disallowance by the Department of a .05¢ deduction taken by plaintiff from the price of each gallon of gasoline sold. The procedure used by plaintiff was as follows: the price of the car wash was $1.50 if the customer purchased no gasoline. However, if, in addition to having his car washed, the customer purchased gasoline he was given a credit against the price of the car wash and this credit was computed by multiplying by 5¢ the number of gallons of gasoline purchased. For example, if the customer purchased 10 gallons of gasoline at 50¢ per gallon he was credited on the car wash (per the above formula) with 50¢ and thus paid $1 for the car wash. On plaintiff's books and records he would reflect the above transaction by showing a $5 sale of gasoline and a $1 car wash. In reporting the transaction to the Department of Revenue he would report the gasoline as having been sold for $5 but claim the 50¢ car wash credit as a deduction from the sale of the gasoline. McMichaels stated that it was the position of the Department that the tax should be paid on the entire sale of gasoline because the .05¢ discount is given on the price of the car wash and not on the retail sale price of the gasoline.

On cross-examination McMichaels stated that a prior audit by the Chi-

cago office of the plaintiff's books covering the period from July 1, 1965, through May 31, 1968, permitted the .05¢ per gallon deduction in question. McMichaels further stated that since he did not believe the prior ruling to be correct, the case was submitted to the Department for a ruling. On January 26, 1972, a ruling was issued by the Department stating that the discount would not be allowed against the retail price of the gasoline.

Horace Henderson, the President of plaintiff corporation, testified that he has received no notice from the Department questioning the .05¢ deduction taken during the 1965-1968 period, and that it was clear from the audit of that period that the corporation was being allowed the .05¢ deduction.

On October 17, 1972, the administrative hearing officer found that the .05¢ discount was against the price of the car wash and not against the price of gasoline, that there was no legal basis for plaintiff to assert the prior audit in support of its protest against the present assessment, that plaintiff had not overcome the Department's prima facie case, and that the final assessment shall be $2,090.92 including interests and penalties. On November 9, 1972, plaintiff's request for a rehearing was denied by the Department. On December 8, 1972, plaintiff filed a complaint for administrative review with the circuit court of Champaign County. After a hearing the circuit court on September 4, 1973, affirmed the decision of the Department of Revenue and entered judgment against plaintiff for $2,090.92 plus costs.

■■ Plaintiff contends that its retailers' occupation tax liability should be based upon the net figure resulting when the .05¢ discount on each gallon of gasoline sold is deducted from the gross receipts for gasoline sales. Plaintiff states that, "The real question is whether due to the nature of taxpayer's business, the sale of automobile washes, it is entitled to deduct from its retail sales [of gasoline] the credit granted by these sales in the wash service charge where the former are an inducement for the latter." We see no merit to this argument. Plaintiff admits that it is engaged in the business of selling tangible personal property at retail and is subject to the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 440 et seq.). Section 2 (par. 441) of that Act states that liability is based on the "gross receipts from such sales of tangible personal property," here gasoline. The exclusions or deductions granted by statute are clearly inapplicable here, and plaintiff cites no administrative ruling supporting such a deduction. Indeed, the departmental ruling of January 26, 1972, stated that the deduction here would not be allowed because it was against the retail price of the gasoline and thus clearly taxable under the gross receipts provision of section 2 (par.

441) of the Act. We find this to be a proper interpretation of said provisions. The term 'gross receipts' is defined in section 1 (par. 440) as "the total selling price or the amount of such sales * * *." "Selling price" or the "amount of sale" is defined in that section as "the consideration for a sale valued in money" and it "shall be determined without any *deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever* * * *." (Emphasis added.) The fact that plaintiff's gasoline sales serve as primarily an inducement to promote the car wash business is irrelevant under our reading of the statutory provisions. Plaintiff here is engaged in both the business of providing a car wash service and in selling tangible personal property at retail. (*Roth, Inc. v. Daley,* 404 Ill. 479, 89 N.E.2d 361.) Since the latter business is within the purview of the Act, plaintiff under its provisions is not entitled to the deduction in question.

■■■ Plaintiff also contends that the State should be estopped from asserting the liability in question because a prior audit of the 1965-1968 period approved the same deduction. We do not agree. Although the record indicates that the Chicago office of the Department made a mistake in allowing the deduction, this does not estop the Department from collecting revenues rightfully belonging to the State merely because plaintiff relied on the prior audit in continuing to take the .05¢ deduction. It is well established that public policy generally opposes the application of an estoppel against the State where public revenues are involved. (*Clare v. Bell,* 378 Ill. 128, 37 N.E.2d 812; *Department of Revenue v. Barding,* 33 Ill.2d 235, 210 N.E.2d 475.) This is true even where detrimental reliance is present. (*People v. Brown,* 67 Ill. 435.) In *Austin Liquor Mart, Inc. v. Department of Revenue,* 51 Ill.2d 1, 280 N.E.2d 437, the court quoted with approval the following language from *State ex rel. Williams v. Adams* (1965), 90 Idaho 195, 409 P.2d 415: "The government is not estopped by previous acts or conduct of its agents with reference to the determination of tax liabilities or by failure to collect the tax, nor will the mistakes or misinformation of its officers estop it from collecting the tax. [Citations.]" (51 Ill.2d 1, 5.) We find the instant case to be within this well established rule. We do not find the 'extraordinary circumstances' present in *Hickey v. Illinois Central R.R. Co.,* 35 Ill.2d 427, 220 N.E.2d 415, to be present here so that the State is precluded by basic concepts of right and justice from claiming tax liabilities lawfully due.

■■ The State contends that the circuit court judgment of September 4, 1973, in the amount of $2,090.92 should draw interest during the time it is on appeal. We agree. Section 3 of the Interest Act (Ill. Rev. Stat. 1973, ch. 74, par. 3) states:

"Judgments recovered before any court or magistrate shall draw

interest at the rate of 6% per annum from the date of the same until satisfied. * * * However, that the judgment debtor may by tender of payment of judgment, costs and interest accrued to date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of appeal * * *."

We see nothing in the record to indicate that the plaintiff tendered the payment of the judgment, costs and interest. Therefore, under section 3 plaintiff is liable for interest accrued at the statutory rate from the date of judgment until satisfaction of same.

Accordingly, for the reasons stated above the judgment of the circuit court of Champaign County is hereby affirmed.

Judgment affirmed.

CRAVEN and TRAPP, JJ., concur.