In the Matter of 1555 BOSTON ROAD Corp., Appellant, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Respondents.

Second Department, January 30, 1978

## APPEARANCES OF COUNSEL

*Podell & Podell (Donald N. David, Israel Schecter* and *Melvyn M. Rothman* of counsel), for appellant.

*W. Bernard Richland, Corporation Counsel (Ernest Bianchi* and *Edward J. McLaughlin* of counsel), for respondents.

## OPINION OF THE COURT

SHAPIRO, J.

In proceedings to review real estate tax assessments, petitioner appeals from the order of the Supreme Court, Kings County, entered March 23, 1977, which denied its motion for an order of the court effectuating the alleged settlement of the parties relating to the tax years 1971/72 and 1972/73.

### THE FACTS

On April 24, 1973 at a hearing held by a tax commissioner with regard to the tentative assessment on the premises here involved for the tax year 1973/74, a compromise assessment involving a reduction of $5,000 for that tax year was reached.

In connection with that settlement, it was also agreed that the assessments for the two previous tax years, as to which certiorari proceedings were then pending, would be reduced a total of $45,000, i.e., an average of $22,500 a year.

In accordance with the established procedure, petitioner's counsel filled in, signed and returned the appropriate forms which had been supplied by respondents. The ensuing procedure generally is that (1) the final assessment for the current year (here 1973/74) is marked on respondents' books in accordance with the agreed amount therefor (and this was done), and (2) the document is signed, on behalf of the City of New York, by a tax commissioner, then by the Corporation Counsel, and then by the Comptroller and, in due course, by a Supreme Court Justice. Here, although the signatures of approval of tax commissioner and the Corporation Counsel were placed thereon (with the document containing such signatures being retained by the respondents), the settlement was never agreed to by the Comptroller.

The settlement form contained the following statement in bold capital letters: "THE UNDERSIGNED WITHDRAWS ITS CLAIM FOR REDUCTION FOR 1973-74 AND AGREES NOT TO INSTITUTE A TAX CERTIORARI PROCEEDING FOR 1973-74"; and, in fact, petitioner did not institute such a proceeding.

On December 28, 1976 petitioner, in the context of the certiorari proceedings involving 1971/72 and 1972/73, unsuccessfully moved to have the settlement for those two years effectuated. It asserted (and respondents have not contested) that: "After many attempts to determine the status of this matter, on December 1, 1976, Podell and Podell [counsel for petitioner] made a demand upon the Comptroller, pursuant to Article 6 of the Public Officers Law and Section 51 of the General Municipal Law, for information concerning the status thereof * * * On December 16, 1976 the Comptroller responded that the settlement had been 'rejected September 1, 1976, sufficient information not provided Comptroller in order to make a determination.' "*

### THE LAW

■ Petitioner argues that it is improper for the Comptroller

---

* Upon the argument of this appeal petitioner asserted, and respondents did not deny, that the Comptroller—apparently by reason of the city's fiscal plight—followed the same dilatory tactic in thousands of cases.

to intrude into the process of evaluating real property because that is within the sole expertise of the tax assessor and the tax commission. Further, petitioner argues that subdivision d of section 93 of the New York City Charter limits the Comptroller's settlement power to "claims", and that a right to refund of excess taxes is not a "claim" (see *People ex rel. New York Edison Co. v Prendergast,* 185 App Div 461, affd 226 NY 573). However, subdivision c of section 394 of the Charter, dealing with the duties of the Corporation Counsel (who was necessarily involved in the pending certiorari proceedings) states that "he shall not * * * offer * * * judgment against the city * * * without the previous approval of the comptroller". Clearly, such involvement of the Comptroller is mandated, and is certainly not an "intrusion". Further, as aforestated, the forms signed by the petitioner, and delivered by its counsel to the tax commission, recognized that the signatures of the Comptroller, as well as of the Corporation Counsel, were required to effectuate the settlement.

The respondents, in support of the order appealed from, contend that the settlement was not final absent the Comptroller's written approval. However, when it suited their purpose they took a contrary position. In *Matter of Vee Realty Corp. v Tax Comm.* (Supreme Ct, Kings County, Aug. 26, 1975 [Index No. 18,513]) it appeared that the petitioner therein settled the tax years 1970/71 through 1975/76 in connection with a hearing, held on April 1, 1975, relating to the tentative assessment for the year 1975-1976. It then submitted the customary forms to the tax commission. There, as here, the settlement for each of the earlier years was substantially above that relating to the tentative assessment. However, apparently by innocent error, the cases involving 1970/71 through 1974/75 (which had appeared on the trial calendar on January 6, 1975) were tried on May 7, 1975 by counsel other than the ones who had negotiated the settlement, resulting in assessment reductions greater than those set forth in the settlement. The petitioner thereupon moved for withdrawal of "its offer of settlement." The moving affidavit of its counsel stated:

"I am informed that the Tax Commission did reduce the 1975/76 assessment to $195,000 in accordance with the offer.

"I am further informed that with respect to all the other years involved the Tax Commission does not consider itself bound. The settlement will not be considered binding by the

Tax Commission for the earlier years until approved by the Law Department, Comptroller and the entire membership of the Tax Commission.

"In view of the fact that the Respondent does not consider itself bound by the offer it would not be unjust to allow Petitioner to withdraw, as its acceptance was based upon inaccurate advice that the matter could not be tried expeditiously."

At oral argument, which was transcribed, the city's counsel stated, "In view of the fact that this settlement before the Commissioner has been complied with with respect to the 1975/76 assessment, and the reduction made in accordance therewith, and in view of the practice that the settlement papers * * * stay with the finance department until May 25th, the date when final assessments are entered in the book, it is apparent that a unilateral settlement has been entered into by petitioner, to permit petitioner two bites of the apple and to take his choice of the settlement or the court decision is both unwarranted and improper."

Counsel for petitioner therein, in response, stated: "No settlement is actually made until such time as that offer is approved by the Tax Commission, the Corporation Counsel and the Comptroller * * * Further, the City in fact is the one who is acting in a duplicitous manner. The City in innumerable cases * * * has made offers of settlement at a commission hearing, had the petitioner file a formal offer and then had withdraw [sic] the offer, sometimes after the period to file a petition has in fact expired * * * thus leaving the petitioner in the unfortunate circumstance of having to make a Court motion to vacate [the settlement of] the prior years and being unable to do anything about the current year because no writ had been filed."

The Special Term denied the motion, holding: "To grant or sustain petitioners' position would result in a complete frustration of the aims and purposes of the Tax Commission conferences and hearings. Their effectiveness would be totally destroyed if * * * any * * * petitioner, was allowed or permitted to withdraw from a written stipulation of settlement."

Thus, the city prevailed on its contention that the real estate owner could not withdraw from the settlement *even though* it had not been approved by the Comptroller. Under the circumstances it is not only egregiously unfair, but an act of effrontery, for the city to here insist that it may renege on

its agreement after the petitioner, in reliance on the settlement, failed to take legal steps, which it now cannot take, to challenge the assessment for the year 1973/74.

■ A municipality may be estopped by its misleading nonfeasance if there would otherwise be a manifest injustice (*Bender v New York City Health & Hosps. Corp.*, 38 NY2d 662, 668; *Eden v Board of Trustees of State Univ. of N. Y.*, 49 AD2d 277, 284; *Quaglia v Incorporated Vil. of Munsey Park*, 54 AD2d 434, 444-445). Here, petitioner may well have suffered substantial damages by its acceptance of a reduction of only $5,000 for the current tax year in return for an agreed average reduction of $22,500 for each of the two previous years.

Respondents argue that petitioner may now proceed to trial on the two previous years. However it cannot do so as to the year for which it received the smallest reduction, since it failed to institute a certiorari proceeding by the October 24, 1973 deadline (see New York City Charter, § 166).

■ ■ While it is true that estoppel against a governmental agency is to "be applied only in truly exceptional cases" (*Eden v Board of Trustees of State Univ. of N. Y.*, 49 AD2d 277, 284, *supra),* there is here present a manifest injustice, of an exceptional nature, since it is clear that the petitioner did not file a certiorari proceeding for the current year, despite a minimal offer of reduction, in reliance on the city's promise of more substantial reductions for the earlier years. The city should not be permitted to welch on the agreement as to the earlier years without putting the petitioner in the same position it would have been in had no settlement been arrived at for any of the years in question.

Since this was a "package deal", the city should not be able to enforce part of the settlement—that relating to the year 1973/74—without at the same time being bound by the settlement for the years 1971/72 and 1972/73.

Therefore the petitioner (upon return of the tax-savings benefit which it received on the settlement of the 1973/74 tentative assessment, plus appropriate interest) should be permitted to institute a certiorari proceeding for the tax year 1973-1974 *nunc pro tunc* as of October 24, 1973 unless the city stipulates that it agrees to proceed with the settlement for the tax years 1971/72 and 1972/73.

DAMIANI, J. P., TITONE and MARGETT, JJ., concur.

Order of the Supreme Court, Kings County, entered March 23, 1977, reversed, on the law, without costs or disbursements, and motion granted to the extent that the petitioner is granted leave to commence a tax certiorari proceeding for the tax year 1973/74 *nunc pro tunc* as of October 24, 1973 (upon return of the tax-savings benefit which it received upon the settlement of the 1973/74 tentative assessment, plus appropriate interest), unless within 20 days after entry of the order to be made hereon, respondents shall serve and file in the office of the clerk of the Supreme Court, Kings County, a written stipulation agreeing to proceed with the settlement for the tax years 1971/72 and 1972/73; in the event such stipulation is signed and filed, the order is reversed and the motion granted, without costs or disbursements.