OPINION OF THE COURT
Herbert Shapiro, J.
The movant, 500 W. 42 St., Inc. (mortgagee) holds a first mortgage on five contiguous lots known as 500-506 West 42nd Street, 557-69 Tenth Avenue and 501-507 West 41st Street in Manhattan. The designations of these lots on the tax map of the City of New York are Block 1070, Lots, 29, 30, 31, 33 and 130.
In July, 1977 the City of New York commenced an in rem tax foreclosure action against the five lots based upon unpaid real estate taxes. On May 24, 1978, a default judgment was entered — no one with an interest in the property having interposed an answer.
The mortgagee now moves to vacate the default judgment of foreclosure and for leave to pay the outstanding taxes.
The first ground asserted by the mortgagee for vacatur of the judgment is based upon the allegation that the owner of the premises was not given proper notice of the action as required by section D17-6.0 of the Administrative Code of the City of New York. That ground for relief is not sustained.
The affidavit of the mortgagee’s president merely states: "Upon information and belief the City of New York failed to mail a proper Notice of Foreclosure to the owner”. There is no affidavit from the owner. Such an unsupported conclusion of the mortgagee is not sufficient to raise a question of fact. Particularly is this so in the face of the proof submitted by the city showing that the notice had in fact been sent. In any event it is doubtful that the mortgagee has standing to assert *803 a failure to serve the owner — who, incidentally, has raised no such objection.
Under the statutory scheme for in rem foreclosure there is provided a mechanism whereby a party in interest (a mortgagee is such a party) may obtain a release of the city’s interest in property obtained by such foreclosure. In substance, section D17-25.0 of the Administrative Code provides that if such a party files a formal application along with a fee of $100 seeking such a release within four months after the city has acquired title, such application shall be granted upon the payment of certain sums. With respect to these payments the section further provides that the city shall then advise the applicant by letter of what sums are due after which the applicant has 60 days within which to make payment.
The principal argument advanced by the mortgagee is that, by reason of the city’s negligence with respect to the handling of the "release” application, it was prevented from making timely compliance with the requirements of section D17-25.0.
Under the city’s rules a separate "release” application was required to be filed for each lot. The mortgagee filed five such applications — one for each lot — with the city. Thereafter the city sent the mortgagee statements as to the amounts due but only with respect to 4 of the 5 lots. After waiting a period of several weeks for the statement on the fifth lot, the mortgagee contacted the city. It was then advised that the fifth "release” application could not be located. Discussions relative to the missing application were had over a period of several months with the city maintaining that it could not proceed to release the fifth lot. Finally, the city was convinced by proof submitted by the mortgagee that the application was filed and the statement of payments due was sent to the mortgagee on June 18, 1979.
The mortgagee then asked the city for updated statements on the other four lots at which time it was advised that the 60-day period within which payment had to be made with respect to the four lots had expired and no "release” would be granted.
The city argues that despite the problem with locating the application for the fifth lot there was no impediment to the mortgagee making timely payment of what was due on the other four. Such an argument, however, ignores the realities of the situation.
The mortgagee agrees that it was not "physically” pre *804 vented from making the payments of the moneys due on the four parcels. It argues, however, that by reason of the city misplacing the application for the fifth parcel, it was placed in an untenable position.
The mortgagee asserts that the mortgage they held was a blanket one covering all five lots and that it was its expectation that eventually it would acquire all five lots in order to erect an office building thereon. It further asserts that without the fifth lot — the largest of all — such a project would be impractical. As a result when the time came to make a decision as to whether to redeem the four lots, it was placed in the intolerable position of having to determine whether to pay the moneys due on the four lots without knowing at that time whether it would be able to successfully redeem the fifth one — a lot essential to its future plans for the development of the site.
The mortgagee being in such a position, in and of itself, does not call for equitable intervention. However, it must be noted that petitioner was in that position only because the city had misplaced or lost its "release” application. The court is persuaded that had the fifth application not been misplaced and had the statements as to the amounts due been sent to the mortgagee, payments thereof would have been timely made and the mortgagee would have been entitled to the release of the five lots as a matter of right. Such conclusion is reinforced by the undisputed fact that as soon as it received the statement as to the fifth lot, the mortgagee offered to pay all sums due on all five lots. Such offer, however, was refused by the city on the ground that the 60-day redemption period for the four lots had expired. In addition, a stipulation has been entered into between the mortgagee and the city pursuant to which the mortgagee has deposited with the city, certified checks aggregating $450,447.61 — the sums allegedly due on the fifth parcel pending a resolution of the dispute with respect to the four lots. With respect to the aggregate balance of approximately $75,000 due on the four lots, the mortgagee is prepared to pay that sum forthwith upon the resolution of the matter.
The city argues that the court is without power to grant the relief requested because subdivision g of section D17-25.0 of the Administrative Code provides another method for redemption by discretionary action of the Board of Estimate. While subdivision g does provide for such a remedy, it does *805 not appear that such remedy is made an exclusive one. Relief compelling a nunc pro tune consideration of a misplaced or lost application has been granted by the courts (Matter of Agar v Board of Estimate of City of N. Y., 52 Misc 2d 285).
The last point to be considered is whether, under all the circumstances, the city should, in effect, be estopped to assert the failure on the part of the mortgagee to make timely payment on the four lots for which statements were initially received.
While estoppel against the city is not readily applied, it is available in an unusual and extremely compelling situation where the city’s conduct, negligent or intentional, results in a manifest injustice. (Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668; Matter of 1555 Boston Rd. Corp. v Finance Administrator of City of N. Y, 61 AD2d 187, 192; Eden v Board of Trustees of State Univ. of N. Y., 49 AD2d 277, 284.) It is concluded that the circumstances of this case present the requisite manifest injustice resulting from the conduct of the city.
Accordingly, the city is directed to accept payment of the sums due on the four lots, numbered 29, 30, 31 and 130, nunc pro tune as if such payments were made within the 60-day period subsequent to the furnishing of the "statements”, provided, however, that such payments are made within 15 days from the date of entry of the order to be entered herein and that on or before the day such payments are made the mortgagee releases for payment to the city the certified checks now held pursuant to the stipulation.