BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY, NEVADA, AND SAM BOWLER, ROBERT BROADBENT, DAVID CANTER, MANUEL CORTEZ, THALIA DONDERO, JACK PETITTI, AND RICHARD RONZONE, CONSTITUTING THE SAID BOARD; JOHN A. McCARTHY, SHERIFF OF CLARK COUNTY, APPELLANTS, v. C.A.G., INC., DBA MAD DOGS, RESPONDENT.

No. 13085

December 9, 1982                                        654 P.2d 531

*Robert J. Miller,* District Attorney, and *John F. Whisenhunt,* Deputy District Attorney, Clark County, for Appellants.

*George E. Graziadei,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a district court order enjoining appellants (hereinafter "County") from enforcing Clark County Code ("CCC") § 29.30.010[1] against respondent (hereinafter "Mad Dogs"). The two dispositive issues in the appeal are whether the County should have been estopped from enforcing CCC § 29.30.010 against Mad Dogs, and whether the County's policy of issuing conditional use permits to Mad Dogs on a temporary basis constituted an arbitrary and capricious exercise of its zoning authority. As we have resolved both issues in the negative, we reverse.

Mad Dogs has operated its restaurant on the ground floor of a certain apartment building in Las Vegas since April, 1978. Mad Dogs occupies the premises pursuant to a five-year lease which includes an option to renew for an additional five years.

Before opening its restaurant, Mad Dogs applied for a business license from the County. As a result of an error on the part of County personnel, a business license was issued to Mad Dogs even though the restaurant is located within an "H-1" zone (limited resort and apartment), and no conditional use permit had been approved by the County as required under

---

[1] CCC § 29.30.010 provides in pertinent part:

In limited resort and apartment zone H-1, no building or structure shall be erected which is arranged, intended or designed for other than one or more of the following uses:

(A) Hotels, resort hotels, inns, and motels, . . .,

(B) Accessory buildings and uses customarily incidental to the above uses;

(C) On-premises signs subject to the provisions of Section 29.44.050(J) of this title;

(D) The following uses, upon the issuance of a conditional use permit in each case which permit shall prescribe conditions as to building site area, materials, dimensions of yards, building setback, provisions of adequate off-street parking and loading space, and such other matters as may be deemed necessary and not considered and/or not specified in this title. . .

(4) Restaurants . . .

CCC § 29.30.010(D)(4). Mad Dogs then spent more than $20,000 in remodeling and equipment expenses for its business.[2]

Several months later, Mad Dogs was cited by the County for failing to obtain a conditional use permit. Mad Dogs then sought unsuccessfully to obtain such a permit from County. Thereafter Mad Dogs filed a complaint seeking, among other things, to enjoin County from enforcing CCC § 29.30.010 against Mad Dogs, and to compel the County to grant it a conditional use permit for the duration of the leasehold.

The parties then entered into a stipulation providing that (1) Mad Dogs would reapply for a conditional use permit; (2) in order to protect nearby residents, Mad Dogs would install a smoke filtering system sufficient to filter the smoke and grease generated by its grill; and (3) the matter could be reviewed by the district court if Mad Dogs were denied the conditional use permit or failed to comply with the other conditions of the stipulation. In April, 1979, the district court issued a preliminary injunction substantially embodying the provisions of the stipulation.

The County subsequently granted Mad Dogs a conditional use permit, but only for a six-month period. When this period expired, the permit was renewed for an additional one-year period, conditioned upon Mad Dogs' agreement to refrain from using a grill or similar device to cook its hotdogs.

After issuing the conditional use permit, the County, believing the matter was settled, moved the trial court to dissolve the preliminary injunction. Mad Dogs, on the other hand, was dissatisfied that it had obtained only a temporary conditional use permit, and thus successfully sought the permanent injunction from which this appeal is taken.

### Estoppel

The district court found that Mad Dogs justifiably relied on County's actions in issuing a business license, noting that Mad Dogs had spent $20,000 for improvements and equipment for its restaurant after receiving the business license. Consequently, the district court ruled that the County was estopped from enforcing the zoning regulations against Mad Dogs. The County disputes the district court's determination, contending that even where a person has detrimentally relied on illegal or erroneous government action the government should not be estopped from enforcing its zoning regulations. The County bases this argument on the notion that the object of such regulations is to protect the public interest, rather than the self-interest of the governing body or its agents.

---

[2]Mad Dogs also obtained a health permit from the County in July, 1978.

Given the circumstances in this case, we reject the notion that the County's issuance of the business license and the health permit estops it from enforcing its zoning regulations against Mad Dogs. Where a public right and the protection of the public are involved, the doctrine of estoppel is to be invoked only in rare and unusual circumstances, and should not apply where it would defeat a policy adopted to protect the public. Scanlon v. Faitz, 373 N.E.2d 614 (Ill.App. 1978), *aff'd,* 389 N.E.2d 571 (Ill. 1979). In this case, it would be unfair and inequitable to apply estoppel to protect Mad Dogs, because to do so could harm nearby residents who were powerless to prevent the County's illegal issuance of the permits to Mad Dogs. On the other hand, Mad Dogs had the opportunity to inform itself of the County's zoning regulations and the need to obtain a conditional use permit. *Compare Scanlon, id.* (building permits were properly revoked where builders failed to comply with ordinance requiring them to obtain official approval of their subdivision plan). We therefore hold that the district court erred in ruling that the County was estopped from enforcing its zoning regulations against Mad Dogs.

### Abuse of Discretion

Mad Dogs argued below, and the district court apparently agreed, that the County's failure to issue a conditional use permit for the duration of Mad Dogs' leasehold constituted an abuse of the County's zoning authority. Noting that the discharge of smoke and grease from the restaurant had bothered persons living near the restaurant, the County argues that its issuance of conditional use permits to Mad Dogs on a temporary basis simply reflects its desire to ensure that Mad Dogs will minimize the discharge of smoke and grease from its restaurant.

The district court's reversal of the County's disposition of this matter was proper only if the County's action can be characterized as arbitrary and capricious. As we stated in State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973), "[t]he review of administrative decisions by the district court and this court is limited to the record made before the administrative tribunal, and in the absence of a showing that the agency acted fraudulently or arbitrarily, the district court may not substitute its opinion for that of the [administrative tribunal]."

Here, particularly in light of the complaints from neighbors

regarding Mad Dogs' operation, there is no basis for characterizing the County's policy of granting conditional use permits on a temporary basis as fraudulent or arbitrary, even if the policy may lead to future litigation and generate uncertainty for Mad Dogs regarding possible future plans for its restaurant. Therefore, we hold that the County's disposition of this matter should not have been overturned as fraudulent or arbitrary.

The judgment of the district court is reversed.