BLOCKER DRILLING CANADA, LTD., Anderson-Myers Drilling Company, Atco Drilling, Inc., Brinkerhoff-Signal, Inc., Burris Drilling Co., Kenai Drilling Co., Inc., Kenting Drilling Co., Ltd., Shelby Drilling, Inc., and Star Drilling Co., Inc., Appellees,

v.

Kent CONRAD, Tax Commissioner of the State of North Dakota, Appellant.

Civ. No. 10588.

Supreme Court of North Dakota.

Aug. 17, 1984.

Fleck, Mather, Strutz & Mayer, Bis-
marck, and Holme, Roberts & Owen, Den-

ver, Colo., for appellees; argued by Warren H. Albrecht, Jr., Bismarck. Appearances by Thomas H. Olson and James D. Butler, Denver, Colo.

Robert W. Wirtz and Carla Smith, Asst. Attys. Gen., Tax Dept., Bismarck, for appellant; argued by Robert W. Wirtz.

PEDERSON, Justice.

We are asked to decide for the first time in this state if the tax commissioner can be estopped from reassessing the use tax liabilities of certain taxpayers. The basic facts of the case are relatively straightforward and undisputed.

The taxpayers are out-of-state corporations who are drilling contractors in the oil and gas business. They engaged the services of Clyde Logan and Rick Logan (hereinafter Logan), tax consultants in Denver, Colorado, to handle their use tax obligations in North Dakota. At all times relevant to this case, Walter Stack (hereinafter Stack) was the Director of Sales and Special Taxes and was the official responsible for use tax assessment. Stack has held that position for a number of years and through several administrations. Logan first met with Stack in 1972 to resolve the use tax liability of one of Logan's clients who had retained the consultant following an audit by the North Dakota Tax Department (hereinafter Department).

Section 57–40.2–02.1, NDCC, provides that, with certain exceptions, a tax be imposed on tangible personal property at the time it is brought into North Dakota if it was not originally purchased for storage, use or consumption in this state. If the property is new, the tax is based on the purchase price; if the property is used, the tax is based on the fair market value of the property at the time it is brought into the state. There is no statutory definition of fair market value for use tax purposes and the Department at the time pertinent to our consideration had no regulations or written guidelines pertaining to fair market value for oil drilling rigs.

At the 1972 meeting with Stack, Logan discussed the method of assessment used for property tax purposes in other oil and gas producing states in the Rocky Mountain region. In 1974, Logan and Stack first used schedules from other states as a base and arrived at a figure for North Dakota use tax purposes, adjusting upward or downward depending on facts supplied by Logan concerning each particular rig.

From 1972 to 1982, Logan met and corresponded with Stack on numerous occasions to report the movement of a drilling rig into North Dakota, to arrive at a figure for determining the use tax due and to arrange for payment of tax due. A similar process was used on the occasions pertinent to this case. Stack himself prepared the use tax returns on at least several occasions and gave them to Logan to be signed and returned by the respective clients. Following the meetings Stack sent Logan letters on the tax commissioner's letterhead confirming the meetings and the values agreed upon. Logan forwarded copies of the letters to the clients and arranged for payment of the tax. At no time did Stack affirmatively represent to Logan that Logan's clients would not be subject to an audit, and Logan makes no assertion to that end. Similarly, Stack does not claim that he felt Logan intentionally misled him. To the contrary, Stack stated that Logan was always cooperative and had not tried to deceive him.

Before 1982 oil activity in North Dakota experienced tremendous growth and drilling rigs were at a premium. The Department turned its attention to the drilling industry as a whole and decided to conduct field audits. By the time the audits were completed, however, the drilling industry had suffered a complete turnaround. The Department, based on the audit results that utilized book value rather than fair market value, reassessed the tax due and imposed penalties and interest.

The taxpayers protested the assessment and filed a declaratory judgment action in

district court. The taxpayers asked the court to declare the original determinations of tax due "final and irrevocable" under § 57–39.2–15, NDCC,[1] thus precluding the tax commissioner from redetermining the tax, to declare the tax commissioner estopped from redetermining or reassessing the tax, and to declare that the tax commissioner was precluded by law and equity from assessing penalties and interest under the facts of the case. The taxpayers also petitioned the court for a Writ of Prohibition to keep the tax commissioner from redetermining and reassessing their use tax liability and from holding an administrative hearing on the validity of the tax assessments. The district court decided in favor of the taxpayers on all counts and the tax commissioner has appealed from the court's final judgment of November 18, 1983.

The Department contends that, as a matter of law, estoppel against the government is not available in North Dakota as a remedy in tax matters and that the tax commissioner, in fact, has an affirmative duty to verify the accuracy of use tax returns and to assess tax deficiencies when necessary. The Department further argues that Stack's meetings with Logan only constituted taxpayer assistance and were not "final determinations" under § 57–39.2–15, NDCC, because the statute charges the tax commissioner himself with the duty of giving the "notice of determination" to the taxpayer. Stack's letters were not on the forms regularly used by the Department and, therefore, according to the Department, they could not possibly be construed as a determination of tax due. Finally, the Department contends that applying estoppel in this case would violate Article X, Section 2 of the North Dakota Constitution (which provides that the power of taxation cannot be suspended or surrendered by grant or contract) and Article X, Section 18 of the North Dakota Constitution (which prohibits the state or its political subdivisions from giving its credit or making gifts or donations to or on behalf of any individual, association or corporation except for reasonable support of the poor).

■ We will dispose of the constitutional argument at the outset. It is self-evident that the tax commissioner has not in any way given up his power to tax, even if estoppel is held to apply to this case. The taxpayers have already paid a use tax; the

1. Section 57–40.2–13, NDCC, provides that the administrative provisions of the sales tax statutes shall govern the administration of the use tax statutes. Thus § 57–39.2–15, NDCC controls the "final determination" of the use tax. The provisions of that section, before amendment in 1983 by the Forty-eighth Legislative Assembly, are as follows:

"57–39.2–15. FAILURE TO FILE RETURN—INCORRECT RETURN. If a return required by this chapter is not filed, or if a return when filed is incorrect or insufficient the commissioner shall determine the amount of tax due from such information as he may be able to obtain, and, if necessary, may estimate the tax on the basis of external indices, such as number of employees of the person concerned, rentals paid by him, his stock on hand, and other factors. The commissioner shall give notice of such determination to the person liable for the tax. If the determination of tax due relates to an incorrect or insufficient return filed by a taxpayer, notice of such determination shall be given not later than three years after the last day on which the return was due or three years after the return was filed, whichever period expires later; notice of determination of tax due for any reporting period for which a taxpayer failed to file a return shall be given not later than six years after the due date of the return; where fraudulent information is given in a return or where the failure to file a return is due to the fraudulent intent or willful attempt of the taxpayer in any manner to evade the tax, the time limitation herein provided for giving notice of the determination of tax due shall not apply. Such determination of tax due shall fix the tax finally and irrevocably unless the person against whom it is assessed, within fifteen days after the giving of notice of such determination, shall apply to the commissioner pursuant to chapter 28–32 for a hearing or unless the commissioner of his own motion shall reduce the same. At such hearing evidence may be offered to support such determination or to prove that it is incorrect. After such hearing the commissioner shall give notice of his decision to the person liable for the tax pursuant to the provisions of chapter 28–32."

issue here is the tax commissioner's authority to redetermine and reassess that tax under these particular facts. The argument that estoppel would effectively constitute a gift is premised on the assumption that the taxpayers are liable for the additional taxes imposed by the tax commissioner. That assumption is invalid, however, since estoppel would mean the tax commissioner was without authority to assess additional taxes in the first place. We find the Department's constitutional arguments meritless.

The issue of whether or not the tax commissioner has the statutory authority to redetermine the use tax and assess additional tax (and consequently, whether or not the Writ of Prohibition was properly granted) is inextricably intertwined with the estoppel issue and we will discuss them together. If Stack's dealings and communications with Logan are found to be a "determination of tax due," then the tax was finally and irrevocably fixed (absent fraud or willful evasion) pursuant to § 57-39.2-15, NDCC since the taxpayers did not protest or apply for a hearing within the fifteen-day limit. It follows that the tax commissioner would then lack the statutory authority to redetermine the use tax or to proceed with any further administrative action concerning the specific drilling rigs that are the subject of this case. If estoppel does not apply, the tax commissioner did have statutory authority to proceed and the Writ of Prohibition should be vacated.

We direct our initial inquiry to whether or not equitable estoppel against the government is available as a remedy in North Dakota. Along with the recent trend of restricting the doctrine of sovereign immunity there has been an increasing trend to whittle away at the inapplicability of estoppel against the government. *See generally*, K. Davis, *Administrative Law of the Seventies* §§ 17.01–17.08 (1976); Note, *Equitable Estoppel of the Government*, 79 Colum.L.Rev. 551 (1979). Both parties cited and attempted to distinguish numerous cases on this point. Many of the cases concerned zoning situations. *See, e.g., Fields v. Kodiak City Council*, 628 P.2d 927 (Alaska 1981); *DuPuis v. Submarine Base Credit Union, Inc.*, 170 Conn. 344, 365 A.2d 1093 (1976); *Saah v. District of Columbia Board of Zoning Adjustment*, 433 A.2d 1114 (D.C.1981); *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981); *Board of County Commissioners of Clark County v. C.A.G., Inc.*, Nev., 654 P.2d 531 (1982). Others concerned tort actions or a variety of non-taxation issues. *See, e.g., Waugh v. University of Hawaii*, 63 Hawaii 117, 621 P.2d 957 (1980); *Chennault v. Sager*, Mont., 610 P.2d 173 (1980); *Manning v. Nevada State Board of Accountancy*, Nev., 673 P.2d 494 (1983); *Bender v. New York City Health & Hospitals Corp.*, 38 N.Y.2d 662, 345 N.E.2d 561, 382 N.Y.S.2d 18 (1976); *Wiggins v. Barrett & Associates*, 295 Or. 679, 669 P.2d 1132 (1983); *City of Shamrock v. Hrnciar*, 453 S.W.2d 898 (Tex.Civ.App.1970); *Shafer v. State*, 83 Wash.2d 618, 521 P.2d 736 (1974); *Beane v. City of Sturgeon Bay*, 112 Wis.2d 609, 334 N.W.2d 235 (1983). Others specifically concerned tax situations and will be discussed in greater detail later in this opinion. The facts in the cases cited above are so clearly different from those of the instant case that it would serve no useful purpose to discuss them in depth. Collectively, they support the general proposition that government (federal, state and political subdivisions or municipalities) can be estopped in appropriate circumstances, even in revenue cases.

The Department takes the position that the United States Supreme Court has clearly decided not to follow the trend of state courts and lower federal courts to allow estoppel against the government under certain circumstances. To support its position, the Department relies on *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685, *reh'g denied*, 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981). In *Schweiker*, a woman met with a Social

Security Administration field representative for about fifteen minutes and inquired about her eligibility for "mother's insurance benefits." The representative erroneously told the woman she was ineligible and, contrary to the claims manual procedures, did not advise her of the advantages of filing a written application. When the woman later learned she was eligible, she filed a written application and began receiving benefits, including the statutory retroactive benefits for the twelve months preceding her written application. The woman contended she should have received retroactive benefits for the twelve months preceding her interview with the field representative. The administrative law judge and the Appeals Counsel both concluded that, under the facts of the case, the Department of Health and Human Services was not estopped from determining benefits only as of the date of written application. The federal district court and appellate court both decided in favor of the applicant. The Supreme Court reversed in a brief per curiam opinion and held that the government was not estopped from denying the retroactive benefits.

We do not agree with the Department that *Schweiker* has a broad application and reverses the trend toward applying estoppel. Neither, apparently, do two federal courts that have been faced with estoppel situations since *Schweiker*. The Seventh Circuit, in determining that estoppel applied in the specific case before it, commented that after the *Schweiker* decision it is far from clear when the government may be estopped beyond the fact that oral misinformation provided by a government employee generally does not provide a basis for estoppel against the government. *Meister Brothers, Inc. v. Macy*, 674 F.2d 1174, 1177 (7th Cir.1982). Similarly, in finding estoppel applicable in a government contracts situation, the Court of Claims pointed out that the noteworthy thing about *Schweiker* was that the decision seems to recognize, at least by reference to lower court decisions, that the doctrine of

estoppel against the government is still alive and well except in the classic situation of trying to use an official's errors to avoid compliance with an affirmative prerequisite to an entitlement. *Broad Avenue Laundry and Tailoring v. United States*, 681 F.2d 746 (Ct.Cl.1982).

When we turn to other jurisdictions to see how they have handled the doctrine of estoppel in tax matters, we find no clear answer, but even those jurisdictions which have applied the doctrine caution that it is to be used sparingly to prevent injustice. Illinois will not apply estoppel in a tax situation regardless of the facts. *See, People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.*, 56 Ill.2d 210, 306 N.E.2d 7 (1974); *Austin Liquor Mart, Inc. v. Department of Revenue*, 51 Ill.2d 1, 280 N.E.2d 437 (1972); *Mr. Car Wash, Inc. v. Department of Revenue*, 27 Ill.App.3d 931, 327 N.E.2d 88 (1975). Arizona also apparently takes a hard line on tax estoppel, although the Arizona Supreme Court has not recently reconsidered the matter. *See, Knoell Brothers Construction, Inc. v. State Department of Revenue*, 132 Ariz. 169, 644 P.2d 905 (Ariz.Ct.App.1982). Many other jurisdictions have either applied estoppel in tax matters or at least have acknowledged that estoppel might be an available remedy under the appropriate circumstances. *See, e.g., Illinois Commercial Men's Ass'n v. State Board of Equalization*, 34 Cal.3d 839, 671 P.2d 349, 196 Cal.Rptr. 198 (1983); *Market Street Railway Company v. California State Board of Equalization*, 137 Cal.App. 87, 290 P.2d 20 (1955); *City of Naples v. Conboy*, 182 So.2d 412 (Fla.1965); *Ware v. Idaho State Tax Commission*, 98 Idaho 477, 567 P.2d 423 (1977); *Iowa Movers & Warehousemen's Ass'n v. Briggs*, 237 N.W.2d 759 (Iowa 1976); *1555 Boston Road Corp. v. Finance Administrator of the City of New York*, 61 A.D.2d 187, 401 N.Y.S.2d 536 (1978); *Ormet Corp. v. Lindley*, 69 Ohio St.2d 263, 431 N.E.2d 686 (1982); *Switzer v. Kosydar*, 36 Ohio St.2d 65, 303 N.E.2d 860 (1973); *Commonwealth Department*

*of Revenue v. King Crown Corp.*, 52 P.Commw. 156, 415 A.2d 927 (1980); *Harbor Air Service, Inc. v. State Department of Revenue*, 88 Wash.2d 359, 560 P.2d 1145 (1977).

Several of the cases from neighboring jurisdictions merit a more detailed discussion. In *Mesaba Aviation Division v. County of Itasca*, 258 N.W.2d 877 (Minn. 1977), the Minnesota Supreme Court abandoned the rigid distinction between sovereign and proprietary functions in determining the applicability of estoppel against the government and held that the government may be estopped if justice so requires. Because the taxpayer in *Mesaba* had failed to show sufficient equity, the county in that particular case was not estopped from collecting the assessed personal property taxes.

In doing away with the governmental-proprietary function distinction, the Minnesota Supreme Court noted that the distinction was no longer a useful tool for determining the proper circumstances in which to estop the government and that by adopting that position, it joined the recent trend of decisions. *Id.* at 880. The court emphasized that it did not anticipate that estoppel would be freely applied against the government and that one important consideration would be whether or not the administrative officer was authorized to make the representation. While acknowledging that there would have to be substantial offsetting equity before the government was estopped in tax matters, the court noted that: "Nevertheless, if a specific representation is authoritatively made to and invites reliance by a taxpayer and the taxpayer's consequent change of position makes it inequitable to retract the representation, estoppel may lie." *Id.* at 880–81.

The Wisconsin Supreme Court has held that state's revenue department was estopped from collecting a sales tax where the taxpayer had relied on the advice of a department representative that the exemption certificates the taxpayer had on file were valid. *Wisconsin Department of Revenue v. Moebius Printing Co.*, 89 Wis.2d 610, 279 N.W.2d 213 (1979). The case is not directly on point since it involves a sales tax instead of a use tax, the government official making representations was a field representative instead of the division director, and the letter relied on was written on plain paper instead of a department letterhead and was sent after a spot-check examination of the taxpayer's records. The letter was also construed to be a notice of determination based upon a field audit as far as barring assessment of taxes for the one month that was the subject of the spot-check.

The *Moebius* decision is useful, however, because of the extensive explanation of the Wisconsin Supreme Court's position that a governmental agency may be estopped even when it acts in its governmental capacity. Each case requires the court to balance the injustice that may result if estoppel is not applied against the public interests at stake if the doctrine is applied. The court noted that although the public has an interest in seeing that each taxpayer bears his fair share of the tax burden, other considerations suggest that in the proper case estoppel may be available against the state in taxation matters. As the court observed:

"Revenues to support state services are gathered primarily as a result of the conscientious and voluntary compliance of taxpayers with the tax laws and Department procedures. It is important that taxpayers receive fair play from tax officials." *Moebius*, 279 N.W.2d at 226.

The Wisconsin Supreme Court concluded that where a party seeks to estop the tax department and the elements of estoppel are clearly present, estoppel applies where it would be unconscionable to allow the state to revise an earlier position.

The rationale expressed in *Moebius* provided the basis for finding estoppel in a more recent Wisconsin decision. *Department of Revenue v. Family Hospital, Inc.*,

105 Wis.2d 250, 313 N.W.2d 828 (1982). In *Family Hospital,* the Department of Revenue had issued a technical information memorandum which stated that parking receipts of a hospital were nontaxable receipts for sales tax purposes. The hospital proved that it had relied on the memorandum, that it had acted to its detriment by failing to collect the tax from persons using the parking facility, and that it would have to deplete its funds in order to pay any assessment. On those facts, the department was held estopped from assessing sales tax on the hospital's parking receipts. While the facts of the instant case are clearly distinguishable, *Family Hospital* is relevant for the way it applied the *Moebius* guidelines to determine if estoppel would lie.

The Department reluctantly concedes that there may be a trend toward allowing estoppel against the government but contends that if that is indeed the case, North Dakota has declined to go along with it. To support this contention, the Department relies primarily on *Werre v. Bowman County,* 79 N.D. 617, 58 N.W.2d 792 (1953) and *Abbey v. State,* 202 N.W.2d 844 (N.D. 1972). While it is true that we have not applied estoppel against the government in the past, we do not accept the Department's position that estoppel against the government is not available as a matter of law.

The *Werre* opinion contained quotations from C.J.S. and an older Michigan decision which constituted dicta to the effect that estoppel will not lie against the government in revenue matters. The taxpayer in *Werre* argued, among other things, that the county was estopped from asserting any claim for unpaid taxes, but the decision was based on bankruptcy law rather than on estoppel. Furthermore, *Werre* was decided in 1953 and needs to be reconsidered in the light of more recent opinions.

In the *Abbey* case, which was an action to quiet title to coal on land that had once been acquired by the State under the Enabling Act, we stated our agreement with the view expressed in C.J.S. that estoppel against the public should only be invoked in rare circumstances and noted that that view was consistent with the position we had taken in *Smith v. Anderson,* 144 N.W.2d 530 (N.D.1966). *Abbey,* 202 N.W.2d at 851. We held in *Smith* that the doctrine of estoppel could not be applied to defeat the rights of the public, for whom an action to quiet title to a public alley was brought. That holding is not the equivalent of saying that estoppel is *never* available against the government or public interest. Similarly, our opinion in *Abbey* does not preclude application of the doctrine in all cases involving the government. We noted that the elements of estoppel had not been proved and, accordingly, there was no basis for applying the doctrine in *Abbey. Id.* at 852. The premise that estoppel against the government is not absolutely barred is further supported by language in this court's opinion in *Jewel Tea Co. v. State Tax Commissioner,* 70 N.D. 229, 293 N.W. 386, 391 (1940), where we stated that when a taxpayer made subsequent repetitions of claims of exemption without objection from the tax commissioner, it could not be said in equity that the taxpayer was not justified in assuming that the commissioner was allowing the exemption.

The Utah Supreme Court in a recent decision declined to apply estoppel against the government under the facts of that particular case, but acknowledged the trend toward narrowing governmental protection and indicated its general agreement with that trend. *Utah State University of Agriculture and Applied Science v. Sutro & Co.,* 646 P.2d 715 (Utah 1982). The Arkansas Supreme Court recently broke with its past decisions and held that the state was estopped from collecting additional unemployment insurance contributions because of the corporation's reliance on statements of a field auditor of the Employment Security Division. *Foote's Dixie Dandy, Inc. v. McHenry,* 270 Ark.

816, 607 S.W.2d 323 (1980). The court concluded that it was compelled to abandon the principle that the state can never be estopped because of the acts of its agents where, in that case, there was no hint of bad faith on the part of anyone concerned in the matter. In so doing, the court cautioned:

> "We do not overrule those cases but we do abandon the principle stated in those cases that the state can *never* be estopped by the actions of its agents. Estoppel is not a defense that should be readily available against the state, but neither is it a defense that should never be available." *Foote's Dixie Dandy*, 607 S.W.2d at 325. [Emphasis in original.]

We hold today that estoppel against the government is not absolutely barred as a matter of law, even in matters concerning taxation. In so holding, we join the increasing number of jurisdictions that have narrowed the scope of governmental protection. We emphasize that the doctrine is not one which should be applied freely against the government, but likewise it is not one which should never be available. It is a doctrine which must be applied on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is *not* applied versus the public interest at stake and the resulting harm to that interest if the doctrine *is* applied.

We reject the Department's contention that estoppel was not available as a matter of law and, accordingly, conclude that the trial court did not err as a matter of law in applying the doctrine. We still must determine if the doctrine was properly applied to the facts of this case. Our scope of review is governed by Rule 52(a), NDRCivP. This court, on appeal, will not set aside the trial court's conclusion that a party has failed to establish the essential elements of its estoppel defense unless the findings of fact upon which the trial court based its conclusions are clearly erroneous. *Gruebele v. Mott Grain Company*, 262 N.W.2d 747 (N.D.1978).

The Department argues that even if estoppel is an available defense, the taxpayers in this case are not entitled to assert the doctrine because they deliberately misrepresented the value of the rigs. The trial court, in its Findings of Fact number 10, specifically found that Logan committed no fraud in reporting the presence of the rigs in North Dakota and that Logan made no purposeful misstatements of fact as to the comparable valuations from other states. The record clearly supports the trial court's finding in this regard and we find the Department's argument to the contrary unfounded.

In *Farmers Cooperative Association of Churchs Ferry v. Cole*, 239 N.W.2d 808, 809 (N.D.1976), at syllabus 4, we set forth the basic elements of estoppel that must be met as to the person being estopped and as to the person claiming the estoppel. As to the person being estopped the elements are: 1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; 2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence the other party or persons; and 3) knowledge, actual or constructive, of the real facts. As to the person claiming estoppel the elements are: 1) lack of knowledge and the means of knowledge of the truth as to the facts in question; 2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and 3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

Are the basic elements of estoppel met when the facts of this case are applied to them? As to the Department, the party being estopped, the facts show that: 1) the tax commissioner, acting through Mr.

Stack, conveyed the impression that he was making a final determination as to the fair market value of the subject rigs and the resulting tax liabilities of each of the taxpayers and that the method of valuation used was acceptable; 2) the Department, through Stack, knew that Logan would rely on the determinations as final and that the taxpayers would use those determinations in setting their contract rates; and 3) the tax commissioner knew the original determinations were subject to change and that other methods were available to determine the fair market value of the rigs in addition to the one proposed by Logan. As to the taxpayers, the party claiming estoppel, the facts show that: 1) the taxpayers had no way of knowing that Stack was not making a final determination of value for use tax purposes and that the Department would later decide that the valuation method used was not acceptable; 2) the taxpayers reasonably believed that Stack had the authority to make a final determination of their use tax liability and relied on that belief in setting their rates or charging their operators pursuant to specific contractual provisions; and 3) the taxpayers can no longer change their rates to accommodate additional tax liability and, because of the current slump in the drilling rig industry, the taxpayers are suffering extreme financial hardship.

The Department maintains that Stack was merely rendering taxpayer assistance and had no authority to bind the tax commissioner, that the taxpayers' reliance on the meetings with Stack and the confirmatory correspondence was not reasonable, that the Department is not a guarantor of economic success for businesses that are assessed additional tax liability, and that the trial court's findings of fact to the contrary are not supported by substantial evidence. We cannot agree that the trial court's findings are not supported by substantial evidence.

Stack himself acknowledged at the trial that he reports directly to the tax commissioner and that the commissioner was personally aware that Logan was meeting with Stack to determine rig values. Stack admitted that he knew the reason that Logan was meeting with him was to comply with the state laws and to establish a fair market value. Furthermore, according to Stack's testimony, the Department had no written guidelines on the method of valuation for drilling rigs and Stack had the authority to make the decision on how to value the rigs.

Stack clearly regarded fair market value as a flexible term, as evidenced by his answer to the trial court's questioning.

"Q. Now, as the person in charge of this Department, why would you even fill out a return that you knew was not reporting a fair market value using the definition of book value? Why would you even let that happen?

"A. Well, Your Honor, I didn't know what the value was, and I didn't know that for certain till my auditors returned; and, quite frankly, that term 'fair market value,' I suppose, is still up for consideration. My guess is that if we went in and audited today with the depressed market that they've all testified to, we would again pick up book value; but I suspect that in any kind of an audit negotiation the fair market value of those rigs would be reduced considerably by our Department from book value. Fair market value to us is a negotiation type of figure, and the book value is a starting point when we audit. And the figure given to me by Mr. Logan was a starting point at that point in time."

Although the figures furnished by Logan may have been a starting point, the figures filled in on the returns were clearly reached after negotiation, according to Stack's trial testimony:

"Q. And by the time you filled out the form, wrote in the number, the tax value had been decided on after negotiation between you and Mr. Logan?

"A. That's correct.

"Q. And each party at that point knew what the value was to be that was put in the form.

"A. Yes.

"Q. And in many cases the final figure varied, did it not, from the average value figure which showed up on these summary sheets that they provided?

"A. Yes.

"Q. Mr. Logan never alone decided the figure, he always needed your acceptance.

"A. True.

"Q. And for the Defendant then you decided whether the figure was acceptable.

"A. Yes.

"Q. And Mr. Logan never—either Rick or Clyde Logan never told you what figure to use, they simply gave you their opinion of what the figure should be.

"A. Absolutely."

. Letters written by Stack following some of the meetings were on official Department letterheads, were signed by Stack in his capacity as Director of the Sales and Special Taxes division, and contained phrases like "We *determined* that the fair market value for sales and use tax purposes ...," "... we *concluded* that the fair market value ...," and "... we were able to arrive at what I believe was an equitable figure for both the client you represent and the state of North Dakota." [Emphasis added.] The statutes do not prescribe the form of a "final determination." We agree with the trial court that the taxpayers reasonably relied on such representations.

We cannot say that under the facts of this case the trial court erred in its determination that the elements of estoppel have been met. The taxpayers, through their consultant Logan, met and negotiated with the person in the Department who had apparent and claimed authority to determine the valuation of their rigs for use tax purposes. They cooperated with the Department in every way, did not intentional-ly mislead the Department, and voluntarily complied with the tax laws of North Dakota. While the Department is correct in saying that it is not responsible for the state of the economy and it does not guarantee the success of any business, to deny that the Department is estopped under the circumstances of this case would result in a manifest injustice to the taxpayers. We agree with the reasoning of the Wisconsin Supreme Court in *Moebius, supra,* that revenue collection depends largely upon the voluntary compliance of the taxpayer and the taxpayer is in turn entitled to expect fair play from the Department. The public's interest in revenue collection in this case is outweighed by the taxpaying public's interest in being entitled to rely on statements made by the Department official authorized to make decisions. It would belittle the office and title which Mr. Stack holds to do otherwise. The judgment of the district court is affirmed.

SAND and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I am skeptical that the doctrine of equitable estoppel should be applied against the State in matters concerning taxation. It appears that "government" has, in the eyes of some people, taken on an animate form to which should be applied the same attributes, good or bad, that are applied to human beings. Government is, of course, the people and when we apply the doctrine of equitable estoppel against the government we are in effect applying it against the people. In large States the impact of the application of such a doctrine under circumstances such as this may be minimal. In a State the size of North Dakota with its small population and small tax base the effects of such a doctrine on the individual are considerably greater. North Dakota does not rely upon property taxes for its revenue [see Article X, Section 1, of the North Dakota Constitution] and therefore the magnitude of the effects is further increased.

Perhaps this is only a reflection of my concern with the growing tendency to hold "government" responsible for wrongs committed rather than the individual who actually perpetrated the wrong. Although this may seem justifiable by the result that the aggrieved party is compensated, that compensation often comes from parties who have not contributed to the harm that has been done.

However, I concur in the result reached by the majority opinion. I reluctantly agree that equitable estoppel against our government is not absolutely barred as a matter of law, even in matters concerning taxation, but I believe that it is a doctrine which should not be applied freely against the government. The majority opinion makes this point but proceeds to analyze the application of the doctrine to the State in this instance in what appears to me to be the same manner it would if the State were not involved. I agree that the doctrine may be applied in this instance only because of the "rare and unusual circumstances" and the obvious injustice which would result. See *Abbey v. State*, 202 N.W.2d 844, 851 (N.D.1972). We are all aware of the "boom and bust" cycle that involved the drilling industry: the demand for drilling rigs and the subsequent drastic reduction in drilling. The plaintiffs could not pass the taxes through to the consumer by way of their rate schedules. If this injustice were not so apparent, I would not agree that the doctrine of equitable estoppel should apply. This is apparently the first time equitable estoppel against the State has been authorized in taxation matters by this court, but I do not believe it should be considered a signal that henceforth it will necessarily be commonplace.

I write also to express my concern regarding the interpretation of Section 57–39.2–15, N.D.C.C. It appears to me that the majority opinion concludes that what constitutes a "determination" within the meaning of the statute is a finding of fact to which we will apply Rule 52(a), N.D.R. Civ.P. If, indeed, that is the law, then it would behoove the Tax Commissioner to expressly specify by rule and regulation what constitutes a "determination" within the meaning of the statute. It appears that under current law a comment made by a Tax Department employee in the process of a taxpayer-assistance program could be subject to a finding that it is a "determination" which this court would overrule only if it is "clearly erroneous." I believe the term "determination" as used in the statute requires a more formal definition.

ERICKSTAD, C.J., and GIERKE, J., concur.